Cara Leslie **ALEXANDER**,
et al., Plaintiffs,

v.

**FEDERAL BUREAU OF
INVESTIGATION, et
al., Defendants.**

Nos. Civ. 96–2123 RCL, Civ. 97–1288 RCL.

United States District Court,
District of Columbia.

Dec. 7, 1998.

Larry Elliot Klayman, Judicial Watch, Inc., Washington, DC, for plaintiff.

James Jordan Gilligan, Elizabeth Jane Shapiro, Julia Fayngold, U.S. Department of Justice, for defendant FBI and Executive Office of the President.

David Evan Kendall, Nicole Kay Seligman, Paul Benedict Gaffney, Williams & Connolly, Washington, DC, for defendant Hillary Rodham Clinton.

James Franklin Fitzpatrick, Michael R. Geske, Arnold & Porter, Washington, DC, Peter Z. Zimroth, Arnold & Porter, New York City, for defendant Bernard W. Nussbaum.

Randall James Turk, David S. Cohen, Miller, Cassidy, Larroca & Lewin, L.L.P., Washington, DC, for defendant Craig Livingstone.

Robert Weinberg, Bredhoff & Kaiser, P.L.L.C., Washington, D.C., Robert Muze, Stein, Mitchell & Mezines, Washington, D.C., for defendant Anthony Marceca.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This matter comes before the Court on the Motion of Defendant Executive Office of the President for a Protective Order and Plaintiffs' Motion to Compel Further Deposition Testimony of Terry W. Good and for Sanctions. Upon consideration of these motions, all supporting, opposing, and reply memoranda, and the relevant law, the Court will deny defendant EOP's motion for a protective order and grant in part and deny in part

plaintiffs' motion to compel. The Court will postpone its ruling on plaintiffs' motion for sanctions in accordance with the terms provided below.

## I. Background

The underlying allegations in this case arise from what has become popularly known as "Filegate." Plaintiffs allege that their privacy interests were violated when the FBI improperly handed over to the White House hundreds of FBI files of former political appointees and government employees under the Reagan and Bush Administrations.

The instant dispute revolves around the deposition of Terry W. Good, the Director of the White House Office of Records Management (ORM). Good was deposed pursuant to a notice of deposition under FED.R.CIV.P. 30(b)(6), and was designated by defendant EOP to testify on the subject of White House compliance with applicable record-keeping statutes. The parties' motions made in connection with this deposition relate to four different subject matters.

First, defendant EOP seeks a protective order, and plaintiffs seek to compel testimony, on a line of questioning involving ORM's maintenance of a file on Monica Lewinsky. During Good's deposition, plaintiffs' counsel asked several questions about documents that the ORM had turned over to the White House Counsel's office in response to a written Counsel Office request for all documents relating to Lewinsky.[1] This Counsel Office request was made to the entire EOP staff to facilitate the White House's response to a grand jury subpoena that the Office of the Independent Counsel (OIC) had served in connection with the Lewinsky investigation.

Counsel for defendant EOP objected to plaintiffs' inquiries on two grounds. First, defendant EOP's counsel instructed Good not to answer the questions propounded regarding Lewinsky until the OIC had been given an opportunity to assert its law enforcement privilege against disclosure of this information.[2] Second, defendant EOP's counsel instructed Good not to answer these questions because they exceeded the authorized scope of relevant discovery in this case. Plaintiffs oppose both of these objections.

Second, plaintiffs seek to redepose Good, based upon his testimony that his understanding was that if he didn't remember something "for sure," he was supposed to respond to the question with the answer "I do not recall" or "I do not remember." Because Good's understanding must be put in the proper context, some background discussion is required on this point.

Early in Good's deposition, plaintiffs' counsel inquired about materials stored at ORM involving Kathleen Willey. As with the Lewinsky inquiries, defendant EOP objected to this line of questioning on the basis of irrelevance. The parties suspended the deposition, obtained an immediate hearing with the Court, and presented arguments on defendant EOP's objections. The Court overruled the objections, reasoning that, under the specific circumstances presented on the Willey-file issue, if the file was maintained in a way that implicated the Privacy Act, then its misuse could prove to be circumstantial evidence of file misuse aimed at the plaintiffs in the case at bar.

After the hearing, the parties resumed Good's deposition, at which time the following disgraceful exchange occurred:

[By plaintiffs' counsel:] During the time that we took an intermission to go see the court and during the time that it took to come back and reconvene this deposition, have you discussed Kathleen Willey with anyone?

[By defendant EOP's counsel:] With anyone other than his counsel?

[By plaintiffs' counsel:] Well, first of all with anyone?

---

1. More specifically, plaintiffs' counsel inquired about the scope of the White House Counsel request, the subject matter of the responsive documents, the offices from which the responsive documents came, and whether the documents contained information involving gifts allegedly provided to Lewinsky.

2. The OIC, through its Deputy Independent Counsel, Solomon L. Wisenberg, later asserted such an objection after its review of the relevant documents. *See* Declaration of Solomon L. Wisenberg, Mot. of Def. EOP for a Protective Order, Exh. E.

[By defendant EOP's counsel:] Object to that question, to the extent it calls for communications protected by the attorney-client privilege, and as phrased, you're directed not to answer it.

. . .

[By plaintiffs' counsel:] Since the time that we broke for the court hearing and returned, have you been in the presence of anyone other than counsel?

[By Good:] I was in a taxicab, so obviously I was in the presence of two cab drivers.

[By plaintiffs' counsel:] In that taxicab, did you discuss Kathleen Willey?

[By defendant EOP's counsel:] Are you asking if he discussed Kathleen Willey with the taxicab driver?

[By plaintiffs' counsel:] No. I'm asking whether the issue of Kathleen Willey arose.

[By defendant EOP's counsel:] I object to the extent that the question asked for communications covered by attorney-client privilege.

[By plaintiffs' counsel:] Since cab drivers were there, it does not involve attorney-client communications.

[By defendant EOP's counsel:] If there were such communication, it does not follow that the cab driver necessarily overheard any such communication.

[By plaintiffs' counsel:] He was present during the conversation, so therefore you have no attorney-client privilege.

. . .

[By defendant EOP's counsel:] Go ahead, Mr. Good. I will allow Mr. Good to answer whether or not there were any discussions on Kathleen Willey either to the courthouse or back.

[By Good:] I don't recall any discussions about Kathleen Willey in either the cab going over or coming back.

[By plaintiffs' counsel:] Are you saying there were no such discussions?

[By Good:] I do not recall.

[By plaintiffs' counsel:] Now these cab rides occurred within the last hour, didn't they?

[By Good:] That's correct.

. . .

[By plaintiffs' counsel:] Mr. [EOP Counsel], [a]re you willing to proffer to us what was discussed concerning Kathleen Willey . . .?

[By defendant EOP's counsel:] I will state as an officer of the court that I can recall no conversations involving Kathleen Willey in the cab over to the courthouse or back.

[By plaintiffs' counsel:] You're saying no such conversations occurred?

[By defendant EOP's counsel:] Not that I can recall.

Good Depo. at 212–14.[3] Thus, the deposition was apparently plagued by an air of forgetfulness. The reason for this difficulty became known in the following passage:

[By plaintiffs' counsel:] Have you discussed Kathleen Willey with anyone other than counsel?

[By Good:] In the context of this deposition, my answer is going to once again be, I do not remember.

[By plaintiffs' counsel:] What do you mean by "in the context of this deposition"?

[By Good:] As I understand it, I am supposed to remember for certain, before I can certain [sic] yes or no.

[By plaintiffs' counsel:] Who told you that?

[By Good:] I have had three or four—

[By defendant EOP's counsel:] Objection. Objection, to the extent that you're calling for communications between attorney and client. I instruct the witness not to answer.

Good Depo. at 212–16. Plaintiffs' counsel returned to Good's misunderstanding—and its effect—later in the deposition, as seen in the following exchange:

---

3. For the sake of brevity, the Court will reference the pages of the Good deposition as "Good Depo." Good's deposition testimony is contained in the *Memorandum of Points and Authorities in Support of Defendant EOP's Motion for a Protective Order*, Ex. B.

[By Good:] It's my understanding under these circumstances, that if I don't remember something for sure, my—the correct answer is I do not recall. I do not remember.

[By plaintiffs' counsel:] But if I ask you whether you think you know, are you saying you will not answer that question?

[By Mr. Good:] It's my understanding that is not an appropriate answer under this environment.

[By plaintiffs' counsel:] So when I have asked you questions up to this point in time, you may have thought you knew, but if you weren't sure, you told me you didn't remember?

[By Good:] I believe that's correct.

Good Depo. at 245.

Based on these facts, plaintiffs seek to redepose Good on all matters on which Good states that he "could not recall." Defendant EOP opposes the redeposition of Good because, in its view, any harm caused by Good's misunderstanding was cured by Good's subsequent review of his entire deposition and submission to further testimony by declaration (under penalty of perjury) on previous matters. Because Good does not wish to change any of his previous answers (and has filed a declaration so stating) and answered questions backtracking over previous matters in the deposition, no redeposition should be required, according to defendant EOP.

Third, plaintiffs request that Good be forced to answer questions regarding whether White House Counsel told him not to release any information contained in an ORM file on Kathleen Willey without Willey's consent. The following deposition testimony is pertinent in this regard:

[By plaintiffs' counsel:] When the Kathleen Willey letters were retrieved and provided to the counsel's office, was there any instruction on the counsel's office not to release them unless they got the permission of Kathleen Willey?

[By defendant EOP's counsel:] I object to any inquiry into communications between the witness and the counsel's office.

Good Depo. at 266. Good later answered the question, by declaration.[4] Of course, Good has not been subjected to cross-examination on this response, and plaintiffs' counsel has had no opportunity to ask follow-up questions since the time the declaration was filed. Nonetheless, defendant EOP contends that this is a dead issue because the original question propounded in the deposition has been answered.

Fourth, the plaintiffs ask for sanctions against EOP counsel, in the form of reimbursement for plaintiffs' costs and attorneys' fees involved in preparing their motion to compel. The factual bases for plaintiffs' motion for sanctions are pervasive throughout the deposition transcript, some examples of which have already been provided. Because the Court will postpone ruling on this issue, further factual background is not warranted.

For the reasons given below, the Court concludes as follows: (1) Plaintiffs' line of questioning regarding the information in Lewinsky's ORM file is outside the scope of relevant discovery in this case;[5] therefore, plaintiffs' motion to compel answers to questions related to this subject matter will be denied, and leave to redepose Good on this subject matter will also be denied. Given these two rulings, a protective order in this regard is unnecessary, and defendant EOP's motion for protective order will be denied as moot. (2) Leave will be granted, however, to redepose Good on the following matters: (a) any matter on which Good's answer was that he "could not recall," "could not remember," or any equivalent thereof; (b) what Good was told regarding any need to obtain Willey's consent before the release of the information in her files, (c) whether Good was told that Willey consented to the release, (d) all details regarding how Good obtained his misunderstanding that he was to answer a

---

4. *See Defendant EOP's Combined Reply Memorandum in Support of Its Motion for a Protective Order and Opposition to Plaintiffs' Motion to Compel Further Deposition Testimony of Terry W. Good and for Sanctions,* Exh. A.

5. Because the Court finds that plaintiffs' inquiries regarding Lewinsky are outside of the scope of relevant discovery, the Court need not address defendant EOP's arguments regarding OIC's law enforcement privilege.

question by responding "I do not recall" when his memory was less than certain, and (e) reasonable follow-up questions on any of these matters. (3) The Court will postpone ruling on plaintiffs' motion for sanctions until the redeposition of Good has been completed. All parties involved shall be directed to file supplemental briefing on sanctions following the conclusion of Good's deposition.

## II. *Analysis*

### A. *Plaintiffs' Questions Regarding ORM'S Lewinsky File*

■ The Court is once again called upon to re-state the permissible scope of discovery in this case. The Court has addressed this issue on more than one occasion, but in significantly different contexts.[6] As stated in two of the prior written opinions on this issue:

> The question becomes whether plaintiffs should be able to pursue discovery into this and other matters bearing on the obtaining and misuse of government files in order to create the inference that it is reasonable to conclude that FBI files were obtained and misused in the instant case.

*Alexander v. FBI*, C.A. No. 96–2123, Memorandum Opinion at 22 (D.D.C. July 10, 1998); *Alexander v. FBI*, C.A. No. 96–2123, Memorandum and Order at 7 (D.D.C. Apr. 13, 1998).

In the course of Good's deposition, plaintiffs' counsel inquired about several matters involving Lewinsky. In general terms, plaintiffs sought to have Good answer questions on information relating to a White House Counsel request that ORM gather all information on Lewinsky, so that the White House could properly respond to a grand jury subpoena. Specifically, plaintiffs asked about the scope of the White House Counsel request, the subject matter of the responsive documents, the offices from which the responsive documents came, and whether the documents contained information involving gifts allegedly provided to Lewinsky.

In response to defendant EOP's relevance objections, the plaintiffs attempt to squeeze their inquiries into the Court's previous language regarding the permissible scope of discovery in this case. Plaintiffs specifically base this attempt on their interpretation of the Court's past allowances of discovery on specific instances of potential misuse of files involving Linda Tripp and Kathleen Willey. As explained below, however, the relevant scope of discovery in the case at bar does not include Good's knowledge of files relating to Lewinsky. Although the Court has allowed discovery into previous discrete matters involving Tripp and Willey for good reason, no such justification exists on the facts of the instant dispute with regard to files relating to Lewinsky.

Because the Court's April 13, 1998 Memorandum Opinion and Order appears to be the genesis of plaintiffs' misunderstanding on the issue at bar, the Court will focus momentarily on that opinion. In its April 13, 1998 opinion, the Court addressed plaintiffs' theory that they should be allowed to prove misuse of the plaintiffs' files by inference through a showing that other persons' files were similarly misused. *See Alexander v. FBI*, C.A. No. 96–2123, Memorandum Opinion and Order at 6, 186 F.R.D. at 4 (D.D.C. Apr. 13, 1998). On the facts presented in that opinion, the Court found that the plaintiffs would be allowed to pursue discovery in order to create a basis from which a reasonable person could draw the inference that because Tripp's files were misused, the plaintiffs' were, too.

But the decision in that instance was not made in a vacuum. That decision was based on specific circumstances that distinguish it from the facts of the instant dispute. In the April 13 opinion, the Court stated:

> Plaintiffs' theory regarding Tripp appears to be as follows. Information from Tripp's federal security-clearance form was improperly released to *The New Yorker* magazine by the Department of Defense. In his declaration submitted to the court, Sidney Blumenthal states that from 1992 to 1997 and immediately preceding his employment as an Assistant to the President, he was employed as a staff writ-

---

6.  *See Alexander v. FBI*, C.A. No. 96–2123, Memorandum Opinion at 22 (D.D.C. July 10, 1998); *Alexander v. FBI*, C.A. No. 96–2123, Memorandum and Order at 7 (D.D.C. Apr. 13, 1998).

er for *The New Yorker*. Plaintiffs submit that it is reasonable to infer that the Department of Defense leaked this information to *The New Yorker* at the direction of the White House with Blumenthal being the conduit through which this information was transmitted. Plaintiffs suggest that the leaking of the information contained in this files was an effort to discredit and smear a perceived enemy of the White House.

*Id.* This passage shows the discrete factual basis on which the Court decided to allow the Tripp discovery to proceed, and its potential relevance at trial. In short, the plaintiffs had some facts to support their theory of file misuse, and the type of misuse paralleled the allegations of plaintiffs in the case at bar.

In contrast, the present dispute regarding the Lewinsky files involves a fishing expedition under a broad theory that would allow plaintiffs to discover information on all of the White House's alleged adversaries without any proper factual grounds to support such discovery. Although the Court allowed the Tripp discovery because there was some reasonable factual basis for an allowance of such discovery, no such basis exists here. To paraphrase defendant EOP, it is one thing for a plaintiff who may have spotted a fish to throw his net in that direction; it is quite another to trawl the entire lake to see if it contains any fish at all.[7] In this instance, the appropriate size net of relevant discovery does not cast so wide as to encompass Good's knowledge of the Lewinsky file. The plaintiffs have provided no facts to justify their questioning on ORM's Lewinsky file.

Moreover, plaintiffs have provided no logical basis to show why any information gained upon further inquiry in this regard would be relevant to their claims. It is undisputed that the Lewinsky information was gathered as a result of an OIC subpoena, and not for any ulterior, illegal purposes. To the extent plaintiffs seek to embark on this line of questioning to establish that the maintenance—and not disclosure—of the files and ORM's surrounding conduct violate the Privacy Act,

such testimony would be cumulative in the context of Good's deposition. Thus, no legal basis exists for further testimony on this point either.

For these reasons, the plaintiffs' motion to compel answers to their questions involving ORM's Lewinsky file will be denied, and defendant EOP's motion for a protective order will therefore be denied as moot.

### B. *Plaintiffs' Request to Redepose Good*

Plaintiffs seek to redepose Good for two reasons. First, plaintiffs assert that they are entitled to a redeposition as a result of Good's mistaken belief that he was to answer that he "didn't recall" if his recollection on any given question was less than certain. Second, plaintiffs contend that they are entitled to redepose Good in order to ask follow-up queries on a question involving Good's knowledge of any instructions given to him by White House Counsel regarding the necessity of obtaining Willey's consent before releasing information contained in her ORM file, which was objected to by defendant EOP's counsel.

Under FED.R.CIV.P. 30(a)(2), a party must get leave of court to redepose a person who has already been deposed in the case. This rule provides that such leave shall be granted to the extent that it would be consistent with the principles enunciated in FED.R.CIV.P. 26(b)(2). Rule 26(b)(2) spells out the factors in the following manner:

(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or

(iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance

---

**7.** *See Defendant EOP's Combined Reply Memorandum in Support of Its Motion for a Protective Order and Opposition to Plaintiffs' Motion to* *Compel Further Deposition Testimony of Terry W. Good and for Sanctions* at 27.

of the proposed discovery in resolving the issues.

Fed.R.Civ.P. 26(b)(2).

The Court will grant leave to redepose Good on the following matters: (a) any matter on which Good's answer was that he "could not recall," "could not remember," or any equivalent thereof; (b) what Good was told regarding any need to obtain Willey's consent before the release of the information in her files, (c) whether Good was told that Willey consented to the release, (d) all details regarding how Good obtained his misunderstanding that he was to answer a question by responding "I do not recall" when his memory was less than certain, and (e) reasonable follow-up questions on any of these matters. Provided, however, that leave is granted only insofar as the Court has expressly provided above. Hence, the Court does not grant leave to redepose Good on the previous line of questioning involving Lewinsky's ORM file. The Court believes that this result comports with the Rule 26(b)(2) factors.

### A. *Redeposition on ORM's Willey-file Information*

■ At Good's deposition, the following exchange occurred:

> [By plaintiffs' counsel:] When the Kathleen Willey letters were retrieved and provided to the counsel's office, was there any instruction on the counsel's office not to release them unless they got the permission of Kathleen Willey?

[By defendant EOP counsel:] I object to any inquiry into communications between the witness and the counsel's office.

Good Depo. at 266. In its briefing on this subject, however, defendant EOP filed a declaration by Good which states that "[n]either I, nor, to the best of my knowledge, anyone else on the ORM staff sought or received advice from the White House Counsel's Office as to whether Ms. Willey's permission was required before the documents in question could be provided to the Counsel's Office." [8] Thus, it appears that plaintiffs have received the answer to their original question.

This answer to the plaintiffs' foundational question on this topic, however, does not moot the plaintiffs' motion to compel further testimony by redeposition. Plaintiffs expressly ask in their memoranda for leave to ask certain follow-up questions, and defendant EOP responds based on a balancing of the Rule 26(b)(2) factors, as opposed to an assertion of the attorney-client privilege.[9] Therefore, because no attorney-client privilege objection exists as to plaintiffs' follow-up questions, the Court will examine the propriety of granting leave to ask such questions solely under the principles given in Rule 26(b)(2).

Upon such an analysis, the Court concludes that allowing reasonable follow-up questions on this point comports with the Rule 26(b)(2) principles. First, the discovery sought on this issue, as limited by the Court, is not unreasonably cumulative or duplicative. Because Good was instructed not to

---

**8.** *Defendant EOP's Combined Reply Memorandum in Support of Its Motion for a Protective Order and Opposition to Plaintiff's Motion to Compel Further Deposit on Testimony of Terry W. Good and for Sanctions*, Ex. A, ¶ 5.

**9.** Defendant EOP addresses its attorney-client privilege arguments only to plaintiffs' original question, which Good answered by declaration. Although defendant EOP disputes plaintiffs' characterization of the law governing the attorney-client privilege on plaintiffs' prior question, it asserts no objection (or argument) as to follow-up questions. Instead, defendant EOP relies primarily on its position that the plaintiffs have received the answer to their original question, and the issue is therefore essentially moot. This argument, however, ignores the propriety of follow-up questions.

Further, even if defendant EOP's general complaints about the prior question could be stretched to apply to follow-up questions, defendant EOP has not carried its burden of showing that the communications at issue are protected. *See In re Lindsey*, 148 F.3d 1100, 1106 (D.C.Cir. 1998). The proponent "must conclusively prove each element of the privilege," and defendant EOP at most has made a minimal, unpersuasive attempt at doing so in this case. *See id.* (quoting *FTC v. Shaffner*, 626 F.2d 32, 37 (7th Cir.1980)). Therefore, the attorney-client privilege has not been raised with regard to follow-up questions on the issue of instructions given to Good regarding the necessity of Willey's consent, and the burden of proving any such privilege, even if properly asserted, has not been met.

answer the foundational question (but later volunteered the answer by declaration, not subject to cross-examination), no testimony was elicited on follow-up questions at all. Hence, duplicity is not a problem. Second, plaintiffs have not had an ample opportunity by discovery to obtain the information they seek, for the same reason; that is, Good was instructed not to answer the question as to what he was told regarding the necessity of obtaining Willey's consent, and Good would presumably be in the best position to provide an answer to other follow-up questions. Thus, plaintiffs have had no opportunity whatsoever to receive other answers on this point. Third, the burden of allowing plaintiffs to ask a few reasonable follow-up questions on this issue does not outweigh its likely benefit. The burden is low because the plaintiffs will be limited to a narrow scope of inquiry, and any negligible burden created does not outweigh the potential benefit of discovery relating to Good's knowledge as to the necessity, if any, of obtaining Willey's consent. Therefore, under the standards set forth in Fed.R.Civ.P. 26(b)(2), the Court will grant plaintiffs' request to ask certain follow-up questions regarding any instructions given to Good on the necessity of obtaining Willey's consent before the release of any information contained in her ORM file.

B. *Good's Misunderstanding Regarding His Answers When His Recall was Less than Certain*

■ As stated above, the Court will grant plaintiffs leave to redepose Good fully in regard to his "misunderstanding" that if his memory was less than certain, he was to respond "I do not recall." Granting such leave comports with the principles set out in Fed.R.Civ.P. 26(b)(2).

As a general matter, Good's responses raise great concerns as to his credibility as a witness. This misunderstanding bears directly upon the veracity of each time he claimed he could not remember something. Indeed, Good himself admits that he had answered questions under this erroneous standard. Defendant EOP's argument, however, is that Good's declaration cures the problem. This argument fails.

Answering questions by declaration or affidavit after a deposition has been concluded is simply not an adequate substitute for live testimony. As counsel for both parties surely recognize, such an approach eschews the opportunity for opposing counsel to probe the veracity and contours of the statements. Furthermore, counsel propounding the (temporarily) unanswered question is denied the opportunity to ask probative follow-up questions.

The Court has voiced these concerns to the parties in this case before, in connection with the testimony of a government witness, Larry Potts. In that instance, Potts sought to quash a subpoena requiring him to testify by deposition in this matter. Potts argued that, based in part on his written declaration, he had no knowledge of relevant facts. The Court stated:

> Plaintiffs should be afforded the opportunity to probe more specifically into the extent of his knowledge.... Although he may very well possess no such information—as his testimony and declaration clearly suggest, plaintiffs should be permitted to test his asserted lack of knowledge and to question Potts on matters directly related to this case.

*Alexander v. FBI*, C.A. No. 96–2123, Memorandum and Order, 186 F.R.D. 21 (D.D.C. May 28, 1998). The same reasoning applies to the facts of this case. As the Court of Appeals in this circuit has noted:

> Depositions ... rank high in the hierarchy of pretrial, truth-finding mechanisms.... Face-to-face confrontations prior to trial, with such indicia of formality as administration of the oath, the presence of counsel and stenographic recording of the proceedings, are a critical component of the tools of justice in civil litigation.

*Founding Church of Scientology v. Webster*, 802 F.2d 1448, 1451 (D.C.Cir.1986). Deposition testimony "permits examination and cross-examination of a live witness by counsel, where there is no opportunity to reflect and carefully shape the information given." Charles Alan Wright, Law of Federal Courts § 84, at 610. Unilaterally deciding when to answer deposition questions does not comport with these principles, and any such

practice will be stopped immediately, except as provided for under the Federal Rules of Civil Procedure.

Finally, the Court expressly rejects defendant EOP's contention that any harm caused by Good's misunderstanding was cured by defendant EOP's allowance of extra time for questions backtracking over previously covered information. As the deposition transcript indicated, this gracious allowance only amounted to a twenty-minute span of time. This brief opportunity surely cannot be said to be enough to recover all of the times this witness stated that he "could not recall" something. Indeed, the deponent claimed to have trouble recalling conversations he had merely one hour before the questions were asked. Good Depo. at 213–14.

For these reasons, the Court finds that the redeposition of Good on the subject matter associated with his misunderstanding that he was to answer "I do not recall" whenever his memory was less than certain comports with the principles enunciated in FED.R.CIV.P. 26(b)(2). Such further testimony would not be cumulative, plaintiffs have had no opportunity by any other means to obtain answers on this subject matter, and the benefit of any truthful answers would far outweigh the burden imposed.

### C. *Plaintiffs' Motion for Sanctions*

The conduct exhibited in this deposition, when combined with the parties' filings of motions to compel and for protective order, raises the specter of Rule 37 sanctions. Rule 37 provides that "[i]f a deponent fails to answer a question propounded .. under Rule[ ] 30 ..., the discovering party may move for an order compelling an answer." FED.R.CIV.P. 37(a)(2)(B). Good is a FED. R.CIV.P. 30(b)(6) witness. Thus, Rule 37(a) of the Federal Rules of Civil Procedure, dealing with sanctions arising out of discovery disputes, governs the instant matter. Importantly, "[f]or the purposes of this subdivision an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond." FED.R.CIV.P. 37(a)(3).

The Court has already said that it will grant in part and deny in part plaintiffs' motion to compel. Therefore, for the purposes of discovery sanctions, the case at bar implicates FED.R.CIV.P. 37(a)(4)(C), which provides that "after affording an opportunity to be heard, [a district court may] apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner." [10] FED.R.CIV.P. 37(a)(4)(C). In deciding whether to sanction the respondent to a Rule 37 sanctions request, the crucial inquiry is whether the respondent's conduct was "a substantially justified," or "whether other circumstances make an award of expenses unjust." FED.R.CIV.P. 37(a)(4)(A). Although the Court reserves final judgment at this time, it seems apparent that Good's "misunderstanding" and other evasive responses can hardly be said to be justifiable at all.

Nonetheless, the Court must postpone any ruling on sanctions on this matter until the conclusion of Good's redeposition. The plain language of Rule 37 makes clear that, under the appropriate circumstances, the Court may assess sanctions against a party, a deponent, or both. Further, sanctions against the attorneys involved may also be required under Rule 37 or other avenues. But it is not clear at this point who should bear the consequences of Good's deposition misconduct. As explained above, the Court's grant of leave to plaintiffs to redepose Good includes an inquiry into the nature, circumstances, and persons involved with his understanding on how he was to answer questions in his deposition. The testimony given in this regard may be highly relevant in connection with an ultimate order of sanctions, if any, in this case.[11] Therefore, the Court will postpone its ruling on plaintiffs' motion for sanctions until the redeposition of Good has been completed.

---

10. Although Rule 37 provides for an "opportunity to be heard," the Advisory Committee Notes to the 1993 Amendments to Fed.R.Civ.P. 37(a)(4) make clear that the Court can consider the issue of sanctions "on written submissions as well as on oral hearings."

11. On the other hand, Good's previous conduct may alone be found to be sanctionable.

At such time, the parties shall file supplemental briefing on the matter.

III. *Conclusion*

For the reasons stated above, the Court will deny defendant EOP's motion for a protective order and grant in part and deny in part plaintiffs' motion to compel. In this regard, the Court concludes as follows:

Plaintiffs' line of questioning involving Lewinsky's ORM file information is outside the scope of relevant discovery in this case; therefore, plaintiffs' motion to compel answers to questions related to this subject matter will be denied, and leave to redepose Good on this subject matter will also be denied. Given these two rulings, defendant EOP's motion for a protective order will be denied as moot on this point.

Leave will be granted, however, to redepose Good on the following matters: (a) any matter on which Good's answer was that he "could not recall," "could not remember," or any equivalent thereof; (b) what Good was told regarding any need to obtain Willey's consent before the release of the information in her files, (c) whether Good was told that Willey consented to the release, (d) all details regarding how Good obtained his misunderstanding that he was to answer a question by responding "I do not recall" when his memory was less than certain, and (e) reasonable follow-up questions on any of these matters.

The Court will postpone ruling on plaintiffs' motion for sanctions until the redeposition of Good has been completed. All parties involved shall file supplemental briefing on this issue following the conclusion of Good's deposition. Plaintiffs' supplemental memorandum shall be due 30 days after the completion of Good's deposition. Defendants' supplemental opposition shall be filed within 11 days thereafter. Any final reply by plaintiffs shall be filed five days after defendants' opposition.