**Cara Leslie ALEXANDER, et al., Plaintiffs,**

v̇.

**FEDERAL BUREAU OF INVESTIGATION, et al., Defendants.**

**Nos. CIV. 96–2123, 97–1288.**

United States District Court, District of Columbia.

March 6, 2000.

Larry Klayman, Judicial Watch, Inc., Washington, D.C., for Plaintiffs or Petitioner.

David W. Ogden, Acting Assistant Attorney General, Wilma A. Lewis, United States Attorney, Anne Weismann, James J. Gilligan, Elizabeth Shapiro, U.S. Department of Justice, Washington, D.C., for Defendants EOP and FBI.

David E. Kendall, Marcie Ziegler, Williams & Connolly, Washington, D.C., for Defendant Hillary Rodham Clinton.

*MEMORANDUM AND ORDER*

LAMBERTH, District Judge.

This matter comes before the court on Plaintiffs' Motion to Compel Further Testimony of Terry Good in Chambers, the Plaintiffs' Motion for Clarification of Time to File Supplemental Memoranda Regarding the Deposition of Terry Good, Defendant Executive Office of the President's (EOP's) Motion for an Extension of Time to File its Supple-

mental Memorandum in Opposition to Plaintiffs' Motion for Sanctions Regarding the Testimony of Terry Good, Non-party Witness Terry Good's Motion for Leave to File a Surreply in Opposition to Plaintiffs' Motion to Compel Further Testimony, and Plaintiffs' Motion to Strike Surreply Memorandum. Upon consideration of the submissions of the parties and the relevant law, the court will deny Plaintiffs' Motion to Compel Further Testimony of Terry Good and deny Plaintiffs' Motion for Clarification of Time to File Supplemental Memoranda. Defendant EOP's Motion for an Extension of Time will be denied as moot. The court will grant Terry Good's Motion to File a Surreply and deny the Plaintiffs' Motion to Strike the Surreply. The court will further deny the Plaintiffs' Motion for Sanctions, which was deferred per this court's prior order of December 7, 1998. *See Alexander v. FBI*, 186 F.R.D. at 123.

## I. *Background*

The underlying allegations in this case arise from what has become popularly known as "Filegate." Plaintiffs allege that their privacy interests were violated when the FBI improperly handed over to the White House hundreds of FBI files of former political appointees and government employees under the Reagan and Bush Administrations.

The instant dispute revolves around the deposition of Terry Good, Director of the White House Office of Records Management (ORM). Good was deposed pursuant to a notice of deposition under FED. R. CIV. P. 30(b)(6), and was designated by defendant EOP to testify on the subject of White House compliance with applicable record-keeping statutes. Plaintiffs first deposed Good on June 30, 1998 and July 2, 1998. At that deposition, Good objected to lines of questioning involving Monica Lewinsky's and Kathleen Willey's ORM file information. Good also testified that it was his understanding that if he didn't remember something "for sure," he was supposed to respond to the question with the answer "I do not recall" or "I do not remember." The deposition transcript revealed that Good had in fact given such answers to several questions, including a question about what was discussed during a cab ride on the very day of the deposition. Accordingly, the plaintiffs then

filed before this court a Motion to Compel Further Testimony of Terry Good and for Sanctions. In response to that motion, on December 7, 1998, this court entered an order granting the plaintiffs leave to redepose Good on the following matters:

(a) any matter on which Good's answer was that he "could not recall," "could not remember," or any equivalent thereof;

(b) what Good was told regarding any need to obtain Willey's consent before the release of the information in her files,

(c) whether Good was told that Willey consented to the release,

(d) all details regarding how Good obtained his misunderstanding that he was to answer a question by responding "I do not recall" when his memory was less than certain, and

(e) reasonable follow-up questions on any of these matters.

*Alexander v. FBI*, Order at 1–2, 186 F.R.D. 113 (D.D.C.1998). This court then postponed its ruling on the plaintiffs' motion for sanctions until the redeposition of Good was completed, and ordered that the "[p]laintiffs' supplemental memorandum shall be due 30 days after the completion of Good's deposition." *See id.* at 123.

Plaintiffs redeposed Terry Good on June 1, 1999. On July 12, 1999, plaintiffs filed their Motion for Clarification of Time to File Supplemental Memoranda Regarding the Deposition of Terry Good. In their motion, the plaintiffs argued that, because they intended to later file a motion to compel further testimony from Good, the time for filing their supplemental memoranda regarding sanctions had not yet begun to run. The deadline, they contend, should be 30 days from the court's ruling on their anticipated motion to compel, and not 30 days after Good's second deposition, or July 1, 1999. Plaintiffs then filed their Motion to Compel Further Testimony from Good on July 26, 1999.

## II. *Analysis*

### A. *Motion to Compel Further Testimony*

█ Plaintiffs seek to compel Good to appear in chambers or in open court to answer questions on the issues contemplated in the

court's order of December 7, 1998. Specifically, plaintiffs want to compel further testimony regarding two lines of questioning: (1) the conversation Good had with Mr. Gilligan, an EOP attorney, in the cab after the hearing on June 30, 1998, and (2) how Good obtained his understanding that he should answer "I do not recall" to questions when his memory was not 100% perfect.

Plaintiffs do not contend that Good refused or failed to answer questions regarding these issues. Instead, they argue that his answers were "evasive" and "non-responsive". A review of the deposition transcript, however, demonstrates that this is not the case.

As plaintiffs note, when they asked Good about the June 30, 1998 cab conversation, he responded that he could not remember what was discussed. Good further answered that he did not discuss the cab conversation with his attorneys other than to tell them that he could not remember what he had discussed with Mr. Gilligan during the cab ride. These answers clearly respond to the plaintiffs' questions, and cannot be characterized as evasive or non-responsive. Whether these answers are in fact truthful is, of course, a different question.

Good also answered plaintiffs' questions about how he came to his understanding that he should testify "I do not recall" when he was unsure of his answer. As the plaintiffs noted in their reply, Good stated at his deposition that his misunderstanding

> arose from his experience testifying in previous matters, including *Association of American Physicians and Surgeons v. Clinton* .... Good also said that before his Congressional Filegate and Travelgate testimony, attorney David Wilson of Hale and Dorr told him that if he did not know something first hand, he had to be careful if it was second or third hand information. Good also said that he could 'not remember' specifically what Clinton DOJ attorney David Souders told him before his testimony in the Health Care Task Force case. But Good also testified that all of these attorneys told him to tell the whole truth.

Plaintiffs' Reply to Oppositions by the EOP and Terry Good to Plaintiffs' Motion to Compel Further Testimony of Terry Good at 4. Therefore, it appears, even by the plaintiffs' own description, that Good did clearly and completely respond to the plaintiffs' questions. Again, whether these responses are truthful is a different question.

In fact, the real cause for the plaintiffs' motion is not that Good *failed to respond* to their questions, but rather their belief that his responses were not truthful. Plaintiffs, however, have no evidence to support their position.

Plaintiffs first contend that Good's testimony that he was still unable to remember the content of his June 30, 1998 cab conversation is incredible, given that "he has had eleven months to search his memory." Plaintiffs' Reply at 12. However, as Good correctly notes, a person's recollection of an event is likely to deteriorate, not improve, over time. Although it may be (and is) hard to believe Good's earlier testimony on June 30, 1998 that he could not recall a conversation that had just occurred, it is much easier to understand that he can not remember it almost a year later. Furthermore, the plaintiffs were given a full six hours of deposition testimony on June 1, 1999, in which to test the veracity and credibility of Good's testimony. Despite this opportunity, the plaintiffs do not provide this court with any substantive evidence that Good's testimony was untruthful. The only other "evidence" plaintiffs produce is their unfounded and unexplained theory that the statement of Good's counsel that he also did not recall any conversation in the cab pertaining to Kathleen Willey somehow "shows that such a conversation occurred." Plaintiffs' Reply at 12. Theories and speculation do not justify subjecting Non-party Good to yet another deposition. As this court has noted earlier, "[a] witness cannot be compelled to submit a different answer to a question simply because plaintiffs were hoping to receive a different answer." *Alexander v. FBI*, 186 F.R.D. 78, 92 (D.D.C.1999). Although plaintiffs may be unhappy with Good's answers, this fact is simply not a basis for requiring Good to provide those answers once again.

Plaintiffs also assert that Good's testimony about how he obtained his misunderstanding is not believable. Plaintiffs point to Good's testimony before the House Government Re-

form Committee during that committee's investigation into the Travelgate and Filegate matters. During that testimony, Good's counsel asked him, on the record, whether he could answer without speculating or guessing. In his June 1, 1999, deposition, Good referred to this question by his counsel as an example of how he came to his misunderstanding. Plaintiffs contend that the fact that Good answered the very next question after receiving that advice without claiming memory loss contradicts Good's recent testimony. Good testified, however, that his counsel's question to him before the committee was only one example of several instructions he had received over the years, which, when combined, was what led to his misunderstanding. Furthermore, Good's misunderstanding was not that he should answer *every* question with "I don't recall." Rather, it was that he should give such an answer when his memory was less than perfect. Therefore, the fact that he fully answered the particular question posed to him after his counsel's instruction not to speculate does not contradict Good's testimony that the instruction helped lead to his misunderstanding.

Plaintiffs next point to the following exchange as "evidence" that Good was not being truthful:

> [By plaintiffs' counsel:] You don't want to get these prior counsel who represented you in the Healthcare Task Force and in these other proceedings in trouble, do you?
> [By Good:] I wouldn't want to do that with anybody, Mr. Klayman, yourself included.
>
> . . .
>
> [By plaintiffs' counsel:] And why wouldn't you want to do that with anybody, myself included?
> [By Good:] It's not in my nature.

Good Depo. at 484–485. Plaintiffs argue that this exchange shows that Good wants to protect his counsel. However, the plaintiffs' next question asked if he would opt for keep-

ing people out of trouble over telling the truth. Following a brief exchange between counsel, Good clearly responded "Mr. Klayman, no the truth comes first. There's no question about that." Good Depo. at 486. Therefore, the exchange upon which the plaintiffs rely does not demonstrate in any way that Good's testimony was untruthful.[1]

Plaintiffs also argue that Good should be compelled to appear in chambers or in open court to answer questions "free from the pressure of the Clinton Administration." Plaintiffs' Motion to Compel at 3. Plaintiffs have not produced any evidence, however, that Good felt any such pressure during his prior testimony. In fact, during the June 1, 1999 deposition, plaintiffs' counsel explicitly asked Good if he was worried about retaliation, to which Good responded that he had no such concern given that he had worked in the White House for many administrations. See Good Depo. at 487–88. Plaintiffs' bare allegation of such pressure, without evidence to support it, does not provide a basis to compel further deposition testimony.

Finally, plaintiffs allege that Good committed other litigation misconduct, and that this "misconduct" is further evidence that his testimony was not truthful. Plaintiffs assert that a document, which Good said he had produced from his personal files, in fact came from White House files, as Good was later "forced to concede." Plaintiffs' Reply at 6. A review of the transcript, however, reveals that Mr. Good testified that the document came from his "own files." Good Depo. at 451. Good then later described these files as "convenience files close by [his] desk" and stated that he "did not wish to imply that they were personal in the legal sense." *Id.* at 452. Therefore, it appears that Good's reference to his "own files" was to distinguish those files he kept in his own office from the rest of the ORM files, and not to imply that they were records he kept on his own, entirely separate from his job responsibilities.

---

1. Plaintiffs also specifically challenge Good's answers to their question about the substance of his conversations with EOP counsel in preparation for his June 30, 1998 and July 2, 1998 deposition. Good responded that he does not have an exact recollection of the conversation, which had taken place approximately one year earlier.

Plaintiffs assert that this response is "not believable". Once again, however, plaintiffs are unable to provide anything other than theory and speculation to support their allegation. As discussed above, plaintiffs are not entitled to compel further testimony simply because they are unhappy with the testimony they received.

Second, plaintiffs allege that Good committed misconduct because he did not himself prepare the initial draft of an affidavit he filed with the court concerning his first deposition. As Good correctly notes, however, it is common practice, and entirely appropriate, for counsel to draft an affidavit for the affiant's review. What is important is that the affiant reviews the affidavit to ensure that it is accurate before signing it. Therefore, plaintiffs have not demonstrated any "litigation misconduct" by Good from which the court might infer that his testimony was untruthful.

In summary, plaintiffs have not established a sufficient basis for granting their motion to compel further testimony. Good fully and clearly responded to all of the plaintiffs' questions at his last deposition. Plaintiffs' motion essentially rests on their allegation that his testimony was untruthful. They are unable to provide the court with any evidence to support this allegation, however. Given that Good has already answered all of the plaintiffs' questions, the discovery sought by the plaintiffs "is unreasonably cumulative or duplicative," and its burden and expense would clearly "outweigh its likely benefit." FED.R.CIV.P. 26(b)(2). Furthermore, the plaintiffs "have had ample opportunity by discovery in [this] action to obtain the information sought." *Id.* Therefore, this court will not compel Non–Party Good to submit to a third deposition.

B. *Motion for Clarification of Time to File Supplemental Memoranda*

■ Plaintiffs also filed a Motion for Clarification of Time, in which they seek to clarify the deadline for filing their supplemental briefing regarding sanctions, as prescribed by this court's December 7, 1998 order. That order stated

It is FURTHER ORDERED that the Court will postpone ruling on plaintiffs' motion for sanctions until the redeposition of Good has been completed. All parties involved shall file supplemental briefing on this issue following the conclusion of

Good's deposition. Plaintiffs' supplemental memorandum shall be due 30 days after the completion of Good's deposition. Defendants' supplemental opposition shall be filed within 11 days thereafter.

*Alexander v. FBI,* 186 F.R.D. 113, 123 (D.D.C.1998).

Plaintiffs contend that their briefs are not yet due because they consider the deposition to still be open given their motion to compel. Good and the EOP argue, however, that the deadline, as set out by the December 7 Order, was clearly July 1, 1999. Despite the fact that plaintiffs did not file a supplemental brief regarding sanctions, Good filed his supplemental opposition on July 12, 1999. On that same date, the EOP filed a motion for an extension of time to file their supplemental opposition. In that motion, the EOP argued that the plaintiffs forfeited their opportunity to file a supplemental memorandum. The EOP also requested that, in the event the court allows the plaintiffs to still file a supplemental brief on sanctions, the EOP's deadline for its filing be extended until 11 days after the plaintiffs' filing.

A plain reading of the court's December 7, 1998 order demonstrates that the plaintiffs missed the deadline for filing their supplemental brief. The court's order explicitly stated that the plaintiffs must file their brief within 30 days of the completion of Good's redeposition. Plaintiffs redeposed Good on June 1, 1999. At this time, the plaintiffs took the full six hours of deposition time allowed by this court.[2] Furthermore, as discussed above, Good responded fully and clearly to all of the questions at this deposition. Thus, the deposition was clearly completed and the 30–day deadline, as contemplated by the court and all parties, began to run on June 1, 1999.

Furthermore, if the plaintiffs needed "clarification" of the deadline because of their alleged intent to file a motion to compel, they should have asked the court for that clarification prior to the presumptive deadline of July 1, 1999. Instead, the plaintiffs did nothing until July 12, 1999, when they first announced their intention to file a motion to compel further deposition testimony.[3] Any

---

2. In its Order of August 12, 1997, this court set a presumptive limit of six hours for each deposition, absent leave of court. *Alexander v. FBI,* Civ. No. 96–2123, Order at 2 (August 12, 1997).

3. Plaintiffs filed their motion for clarification on July 12, 1999, after the EOP had contacted them and inquired about their failure to file a supplemental brief. They then filed their motion to

decision to move to compel further testimony from Good should have been made within the 30–day deadline imposed by this court. Plaintiffs can not simply ignore a court-imposed deadline, and then later try to extend, or "clarify", that deadline after the fact by announcing an intent to file another, new motion. If plaintiffs wished to postpone supplemental briefing on sanctions until after resolution of their putative motion to compel, they should have filed their motion for an extension, or "clarification" of time before the original July 1, 1999 deadline. Having failed to do so, the plaintiffs waived their opportunity to file their supplemental memorandum regarding sanctions.

### C. *Sanctions*

■ As the time has now passed for any additional briefing on the subject, the court will now consider the plaintiffs' original motion for sanctions.[4] In this motion, the plaintiffs seek sanctions pursuant to FED.R.CIV.P. 37. If a motion to compel disclosure or discovery is granted, Rule 37(a)(4)(A) authorizes an award of fees and costs to the movant, unless the court finds that the "opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust." FED.R.CIV.P. 37(a)(4)(A). Plaintiffs' motion to compel, however, was granted in part and denied in part. *Alexander v. FBI*, 186 F.R.D. 113, 114 (D.D.C.1998). Therefore, Rule 37(a)(4)(C) governs. That rule states that "[i]f the motion is granted in part and denied in part, the court may … apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner." FED.R.CIV.P. 37(a)(4)(C).

The court finds that there is no reason for apportioning legal fees between the parties. As discussed above, there is no evidence of any misconduct by Good or the EOP. Based on Good's testimony at his redeposition, it appears that Good's claimed lack of recollection, which led to the plaintiffs' original motion to compel, was the result of a misinterpretation of advice previously received from

various counsel, and not the product of any intent to evade or deceive. Furthermore, Good fully complied with the court's order to compel, testifying fully as to his misunderstanding of how to respond to questions when he was less than certain of his answers and answering all questions clearly and apparently to the best of his ability at his redeposition. Given these factors, there is no reason for the court to assess further costs on Good or the EOP.

■ Plaintiffs also request sanctions pursuant to the court's inherent authority and 28 U.S.C. § 1927. The court possesses the inherent power to monitor litigation closely and to sanction litigants for abusive practices. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764–65, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). Before awarding sanctions, however, the court must make an explicit finding that counsel acted in bad faith. *Id.* at 767, 100 S.Ct. 2455. "A party demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of the court order." *Alexander v. FBI*, 186 F.R.D. 6, 11 (D.D.C.1998)(citing *Hutto v. Finney*, 437 U.S. 678, 679 n. 14, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978)).

■ Section 1927 permits an award of fees and costs where counsel "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927 (1994). Unlike the imposition of sanctions under the court's inherent power, "[t]he law in this circuit is unsettled over whether a court must find an attorney's actions to be in bad faith before imposing sanctions under section 1927." *United States v. Wallace*, 964 F.2d 1214, 1218–19 (D.C.Cir.1992) (discussing split among circuits). "Nevertheless, all of the courts, including those applying a lesser standard, at minimum agree that unintended, inadvertent and negligent acts will not support an imposition of sanctions under section 1927." *Id.* at 1219 (quoting *Cruz v. Savage*, 896 F.2d 626, 631 (1st Cir.1990)). Because it appears that the conduct at issue here, although improper, was unintended and inad-

---

compel, which consisted of primarily quoted excerpts from Good's deposition, two weeks later on July 26, 1999.

4. In its December 7, 1998 Order, the court postponed any ruling on the plaintiffs' motion for sanctions until after Good's redeposition. *Alexander v. FBI*, 186 F.R.D. at 123.

vertent, this court need not address the issue of the appropriate standard to be applied under section 1927. Accordingly, sanctions are not warranted pursuant to either the court's inherent powers or section 1927. Nor are the plaintiffs entitled to attorneys' fees and costs pursuant to FED.R.CIV.P.37.

### III. *Conclusion*

For the reasons stated above, the court HEREBY ORDERS that:

1. Plaintiffs' Motion to Compel Further Testimony is DENIED. Terry Good's Motion to File a Surreply is GRANTED. Plaintiffs' Motion to Strike the Surreply is DENIED.

2. Plaintiffs' Motion for Clarification of Time to File its Supplemental Memorandum Regarding the Deposition of Terry Good is DENIED. Defendant EOP's Motion for an Extension of Time is DENIED as moot.

3. Plaintiffs' Motion for Sanctions is DENIED.

SO ORDERED.