**Stephen M. FLATOW, Plaintiff,**

v.

**The ISLAMIC REPUBLIC OF IRAN, et al., Defendants.**

**No. CIV.A. 97–396 (RCL).**

United States District Court, District of Columbia.

June 5, 2001.

**6**

Thomas Fortune Fay, Steven R. Perles, Washington, DC, for plaintiff.

Victor Holm, Silver Spring, MD, for Victor Holm.

Andrea Gail Cohen, Sanjay Manohar Bhambhani, David Mendel, Carol Federighi, U.S. Department of Justice, Washington, DC, for United States of America.

Rodney H. Glover, Gardner, Carton & Douglas, Washington, DC, Lee Davis Thames, C. Maison Heidelberg, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, MS, for FMC Corporation.

David Mendel, Vincent Morgan Garvey, U.S. Department of Justice, Washington, DC, for the Department of the Treasury.

## MEMORANDUM AND ORDER

LAMBERTH, District Judge.

Now before the Court are three motions dealing with the Department of Treasury's duties in light of the enactment of the Victims of Trafficking and Violence Protection Act of 2000. First, the Department of Treasury moves to narrow the scope of a subpoena commanding it to produce certain documents. Second, the plaintiff moves to compel the Treasury Department to pay post-judgement interest on the punitive damages awarded him on March 11, 1998. Third, the Department of Treasury moves for various protective orders for its offices and officials. After a full review of the parties' memoranda, the applicable law, and for the following reasons, the Court GRANTS the Treasury Department's motion to modify the subpoena, DENIES the plaintiff's motion to compel payment, and DEFERS ruling on the Treasury Department's motion for protective orders.

## I. BACKGROUND

On March 11, 1998, this Court found the Islamic Republic of Iran responsible for a bombing which caused the death of the plaintiff's daughter. The Court awarded the plaintiff over $225 million in compensatory and punitive damages. Since that time, the plaintiff has tenaciously pursued the satisfaction of this judgment. A major breakthrough occurred on October 28, 2000, when the Victims of Trafficking and Violence Protection Act of 2000 ("Victims Protection Act" or the "Act") became law. This statute permitted certain victims of terrorist acts to collect 100% of their compensatory damages from the United States Government. *See* Victims Protection Act, § 2002(a)(1)(B). The plaintiff exercised this right, and was paid $26 million by the Department of Treasury on January 4, 2001. In return for this payment, the plaintiff was required to, and did indeed,

> relinquish all rights to execute against or attach property that is at issue in claims against the United States before an international tribunal, that is the subject of awards rendered by such tribunal, or that

is subject to section 1610(f)(1)(A) of title 28, United States Code.

Victims Protection Act, § 2002(a)(2)(D). Section 1610(f)(1)(A) permits the attachment of foreign property which is regulated by certain portions of the "Trading with the Enemy Act, [the] Foreign Assistance Act of 1961, [and the] International Emergency Economic Powers Act." 28 U.S.C. § 1610(f)(1)(A).

Despite collecting $26 million under the Victims' Protection Act for his compensatory damages, the plaintiff continues to pursue satisfaction of his substantial punitive damages award. He therefore continues to rely on a June 5, 1998 subpoena served on the Department of the Treasury.

The June 5, 1998 subpoena sought from the Treasury Department the following records:

1. All documents of any type or description pertaining to any assets which any of the named defendants . . . have or ever had or with respect to which any named defendant has asserted or alleged any interest, claim, ownership right or security interest;

2. All documents of any type or description indicating ownership of assets by any of the . . . named defendants;

3. All documents of any type or description pertaining to any assets of the . . . named defendants which are in the custody, safekeeping, care, control, or constitute "blocked assets" of any of the . . . named defendants;

4. All documents indicating the location description, or nature of any assets of the . . . named defendants;

5. No document the production of which would violate 26 U.S.C. § 6103 is sought by this subpoena.

*See* June 5, 1998 Subpoena (as modified by Memorandum and Order, Sept. 14, 2000, at 14). Although the Treasury Department objected to the subpoena as overly broad and unduly burdensome, the Court, for the most part, rejected this challenge and ordered the Department to comply with the subpoena.[1]

The Treasury Department now returns to this Court and again argues that the subpoena is overly broad and unduly burdensome. However, the argument this time is predicated on the plaintiff's relinquishment of certain attachment rights, as commanded by Section 2002(a)(2)(D) of the Victims Protection Act. Specifically, the Department argues that, because the plaintiff has "relinquished his right to execute or attach" certain property under Section 2002(a)(2)(D) of the Act, the subpoena should be "modified to exclude from its scope documents related to [such] property." Brief for Department of Treasury, Apr. 26, 2001, at 2. Further, the Department asks that "certain Treasury offices" receive "protective orders that further discovery not be had under the plaintiff's subpoena." *Id.*

Separate and distinct from the subpoena issue is the plaintiff's motion to compel the Department of the Treasury to pay post-judgment interest on the plaintiff's punitive damages award. The plaintiff argues that the Treasury's duty is made plain and clear by Section 2002(a)(1)(B) of the Victims Protection Act. That provision directs the Secretary of the Treasury to pay the plaintiff "post-judgment interest, as provided in section 1961 of . . . title [28]." Victims Protection Act, § 2002(a)(1)(B). Besides disagreeing with the plaintiff on the Treasury Department's duties under section 2002(a)(1)(B), the Treasury Department also argues that the plaintiff "cannot convert litigation regarding his Rule 45 subpoena into a proceeding involving an unrelated claim for monetary relief under

---

1. The Court did find that the paragraph 5 of the original subpoena violated Federal Rule of Civil Procedure 45. That paragraph read:

All lists of assets or documents pertaining to assets of any of the . . . named defendants which are in the possession of the Department of the Treasury or any agency or department of the government of the United States.

The Court also found that the subpoena might be construed to require the production of income

tax records, which would be a violation of 26 U.S.C. § 6103. Therefore, in light of the overbreadth of the original paragraph 5, and possible conflict with 26 U.S.C. § 6103, the Court replaced the original paragraph 5 with the paragraph 5 listed above. *See Flatow v. Islamic Republic of Iran*, 196 F.R.D. 203, 209 (D.D.C. 2000).

Section 2002(2) against Treasury, a nonparty to this lawsuit." Brief for Treasury, Apr. 26, 2001, at 22. The Department further argues that, even if the plaintiff's motion is properly before the Court, it must be dismissed because the United States has not "waived its sovereign immunity to suits of this type in the United State District Court." *Id.* at 24.

\* \* \*

The Court now considers these issues.

## II. ANALYSIS

### A. The Defendant's Motion to Modify the June 5, 1998 Subpoena

#### 1. Standard for Modification of a Subpoena

■ Rule 45(c)(3) of the Federal Rules of Civil Procedure directs a court to "quash or modify the subpoena if it ... subjects a person to undue burden." Fed.R.Civ.P. 45(c)(3). In identifying an "undue burden", a court is to look at several factors, such as "[the] relevance [of the materials sought], the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Alexander v. FBI*, 186 F.R.D. 21, 34 (D.D.C.1998) (citing *United States v. International Bus. Machines, Corp.*, 83 F.R.D. 97, 104 (S.D.N.Y.1979)). *See also Linder v. Calero-Portocarrero*, 180 F.R.D. 168, 173 (D.D.C.1998). When the burdensomeness of a subpoena is at issue, the onus is on the party alleging the burden to prove that the subpoena violates Rule 45. *See Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 403 (D.C.Cir.1984).

#### 2. The June 5, 1998 Subpoena

■ Based on Rule 45 and the caselaw interpreting it, the Court is thus faced with a simple question: does the June 5, 1998 subpoena seek information which is irrelevant or unnecessary to the plaintiff? The Court finds that it does.

First and foremost, the plaintiff freely admits that he made an election under section 2002(a)(1)(B) of the Victims Protection Act, and that pursuant to this election, he relinquished his rights to attach various types of Iranian property. It therefore follows that information relating to such property is irrelevant or unnecessary to his goal of collecting punitive damages. Yet his subpoena still seeks the production of such information. For example, paragraph 1 requests:

> All documents of any type or description pertaining to any assets which any of the named defendants ... have or ever had or with respect to which any named defendant has asserted or alleged any interest, claim, ownership right or security interest.

Plaintiff's June 5, 1998 Subpoena. The expansive scope of that paragraph indisputably covers information on assets which the plaintiff, after electing to receive his compensatory damages under section 2002, can no long seek to attach. Thus, inasmuch as the subpoena in its current form seeks information relating to assets which the plaintiff has no right to attach, the subpoena is overbroad in violation of Rule 45. The Court therefore finds the following modification of the subpoena to be in order:

> Add the following after paragraph 5:
>
> 6. Paragraphs 1–4 shall not be construed to require the production of documents or information relating to "property that is at issue in claims against the United States before an international tribunal, that is the subject of awards rendered by such tribunal, or that is subject to section 1610(f)(1)(A) of title 28, United States Code."

The plaintiff makes two arguments in opposition to this decision. First, the plaintiff argues that the subpoena should not be modified because "the Treasury has a mandatory duty to Assist this Court in locating the assets of the Islamic Republic of Iran." Brief for Plaintiff, March 23, 2001, at 13. The plaintiff traces this so-called "duty" to 28 U.S.C. § 1610(f)(2)(A) as amended by section 2002(f) of the Victims' Protection Act. That provision states that the Treasury

> should make every effort to fully, promptly, and effectively assist any judgment creditor or any court that has issued any such judgment in identifying, locating, and

executing against the property of that foreign state or any agency or instrumentality of such state.

28 U.S.C. § 1610(f)(2)(A) (as amended by section 2002(f) of the Victims' Protection Act).

The plaintiff's argument on this issue falters because Courts should not "construe statutory phrases in isolation", *United States v. Morton*, 467 U.S. 822, 828, 104 S.Ct. 2769, 81 L.Ed.2d 680 (1984), but rather should seek to "fit [them], if possible, ... into a harmonious whole." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000). Thus, it is important to recognize that, although section 1610(f)(2)(A) directs the Treasury "make every effort" to assist the plaintiff in finding a foreign country's assets, section 2002(a)(2)(D) of the Victims Protection Act clearly prohibits the plaintiff from attaching some of those very assets. It would be patently illogical for Congress to require the Treasury to assist the plaintiff in doing something that the plaintiff is not permitted to do. Thus, section 1610(f)(2)(A) should be read to urge the Treasury to make every effort to help the plaintiff locate assets *which he is permitted to attach*.[2]

The plaintiff's second argument is that the property enumerated in Section 2002(a)(2)(D)—that is, the property which he relinquished the right to attach—does not include "Iranian commercial property" or property that is not within the "custodial control" of the United States. Brief for Plaintiff, March 23, 2001, at 9, 11–12. In making this argument, the plaintiff openly asserts that he struck a deal with Congress and the Executive, and that, as part of that deal, he would still be permitted to attach such property. Thus, the plaintiff states that the

text of § 2002 was the product of direct, closed negotiations between Jack Lew, Director the Office of Management and Budget and Stuart Eizenstat, Deputy Secretary of the Treasury on behalf of President Clinton, and Senators Connie Mack (R–FL.) and Frank Lautenberg (D–N.J.) on behalf of the victim's families.

Brief for Plaintiff, Mar. 23, 2001, at 9.

The Court finds the plaintiff's argument quite unpersuasive. Even if the text of section 2002 was the "product of direct, closed negotiations," its force of law derives from the vote of Congress and the signature of the President. As such, the Court's role is to apply the law as it reads, not to divine some "deeper" meaning through historical sophistry.[3] And the law clearly reads that the plaintiff, by electing to receive 100% of his compensatory damages, "relinquish[es] all rights to execute against or attach property" that falls into any of three categories:

(1) property that is "at issue in claims against the United States before an international tribunal;"

(2) property that is "the subject of awards rendered by such tribunal, or"

(3) property that is "subject to section 1610(f)(1)(A) of title 28, United States Code."

Victims Protection Act, § 2002(a)(2)(D). Section 1610(f)(1)(A) applies, in relevant part, to

any property with respect to which financial transactions are prohibited or regulated pursuant to ... sections 202 and 203 of the International Emergency Economic

2. The plaintiff and the Treasury Department spar at length over whether the language of 28 U.S.C. § 1610(f)(2)(A) imposes a mandatory or hortatory duty on the Treasury Department. That issue need not be addressed here, as there is no allegation that the Treasury has not complied with 28 U.S.C. § 1610(f)(2)(A). Rather, the only issue before the Court is whether the June 5, 1998 subpoena should be modified under Rule 45. Even if 28 U.S.C. § 1610(f)(2)(A) imposed a mandatory duty on the Treasury, as the plaintiff argues, the June 5, 1998 subpoena would still be facially overbroad because it seeks information relating to property that cannot be attached.

3. The Court is not blind to the legal theory the plaintiff is attempting to invoke. *See* Frank H. Easterbrook, Statutes' Domains, 50 U. Chi. L.Rev. 533 (1983) (arguing that legislation is the product of interest group negotiation and thus should sometimes be interpreted so as to give each party the benefit of the bargain). But even Judge Easterbrook would not advocate the enforcement of a bargain that is at clear odds with the text. *Id.* at 535.

Powers Act (50 U.S.C. § 1701–1702) or any other proclamation, order, regulation, or license issued pursuant thereto.

28 U.S.C. § 1610(f)(1)(A). Nowhere in these provisions is there a distinction made with regard to whether property is or is not in the "custodial control" of the United States government. The provisions plainly prohibit the plaintiff from attaching property that is regulated by the IEEPA, and the modification of the June 5, 1998 subpoena so as to exclude the production of such records is wholly appropriate.[4]

* * *

Having found that the June 5, 1998 subpoena should be modified as described above, the Court now proceeds to the second issue under consideration: the Treasury's duty to pay interest on the plaintiff's punitive damages award.

## B. The Plaintiff's Right to Interest On His Punitive Damages Award

■ The plaintiff argues that he is entitled to post-judgment interest on his March 11, 1998 punitive damages award. The Treasury Department contests the plaintiff's ability to sue it in this Court, and also contests its duty to pay under the Victims Protection Act. The Court finds that the Victims Protection Act does not compel the Treasury Department to pay post-judgment interest as demanded by the plaintiff.

Section 2002(a)(1)(B) of the Victims Protection Act directs the Treasury to pay the plaintiff "amounts necessary to pay post-judgment interest, as provided in section 1961 [of title 28, United States Code]." Section 1961 of title 28, United States Code, provides that

Interest shall be allowed on any money judgment in a civil case recovered in a district court. Execution therefor may be levied by the marshal, in any case where,

by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State. Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1 year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment.

28 U.S.C. § 1961(a).

Based on these statutory provisions, and the well-established canon not to interpret a statute so as cause absurd results, the Court finds that the plaintiff is not entitled to post-judgment interest for his punitive damages. Although section 2002(a)(1)(b) does refer to section 1961 for the payment of post-judgment interest, it is likely that this reference is intended to control *how* post-judgment interest is computed and paid—not as a way of binding the United States Treasury to the *indefinite* obligation to pay interest to the plaintiff on a several-hundred-million dollar claim. Such a result would be absurd. It strains the edges of logic (not to mention statutory construction) to think that the plaintiff, who has specifically chosen not to collect any portion of his punitive damages from the United States, has the statutory right to demand the United States nonetheless pay him interest on that claim.

The senselessness of this interpretation is illustrated by a comparison of sections 2002(1)(1)(A) and 2002(a)(1)(B). Section 2002(a)(1)(A) permits a victim of terrorism to collect "110 percent of [his] compensatory damages" provided he "relinquishes all rights and claims to [his] punitive damages." On the other hand, section 2002(a)(1)(B) pays a terrorism victim only "100 percent of [his] compensatory damages," but permits him to continue to pursue the recovery of his puni-

---

4. The Court also rejects the plaintiff's second argument with respect to the property covered under Section 2002(a)(2)(D). In that argument, the plaintiff asserts that the Treasury's current interpretation of section 2002(a)(2)(D) is "incongruous" with an interpretation asserted in the United Stated District Court for the Southern District of California. Brief for Plaintiff, Mar.

23, 2001, at 11–12. Without delving into that matter, the Treasury's interpretation, as manifested in litigation, cannot alter the clear meaning of the statute. Thus, the plaintiff is still prohibited attaching certain Iranian property pursuant to section 2002(a)(2)(D) of the Victims Protection Act and 28 U.S.C. § 1610(f)(1)(A).

tive damages. Under the reading that the plaintiff proposes, a hypothetical terrorism victim would be faced with the following personal decision:

(1) take 110 percent of your compensatory damages and nothing else, or

(2) take 100 percent of your compensatory damages, *and* an annual interest payment of around 5% on your much-larger punitive damages award, with the knowledge that, if you don't collect your punitive damages award from the defendant, you will collect its equivalent amount in approximately 20 years from the United States Treasury.

What rational person, having the right to a substantial punitive damages award, would ever choose the first option? The first years' interest on a victim's punitive damages claim could quite often exceed 10% of the victim's compensatory damages claim, thus making the second option more profitable after only a single year.

Thus, if the plaintiff's interpretation were adopted, section 2002(a)(1)(A) would be effectively excised from the Victim's Protection Act—a result that is strongly disfavored. *See Wilderness Soc. v. Morton,* 479 F.2d 842, 856 (D.C.Cir.1973) (collecting cases and stating that "[t]here is a presumption against construing a statute so as to render it ineffective"). The plaintiff's claim for payment of interest on his punitive damages must therefore be denied.

## C. The Treasury Department's Motion for Protective Orders

The Treasury Department seeks several protective orders dealing with the production and discovery of documents pertaining to Iranian assets. Specifically, the Treasury asks for the following relief:

(1) entry of a protective order that discovery not be had from either the Office of Foreign Assets Control or from the Chief Counsel's Office (Foreign Assets Control);

(2) entry of protective orders with respect to certain categories of records that are produced or made available for inspection by the Office of the Comptrol-

ler of the Currency; and that further discovery not be had as to this Office;

(3) entry of a protective order that further discovery not be had as to the United States Customs Service; [and]

(4) entry of a protective order that the Departmental Offices need not produce documents that relate to the Lend Lease and Surplus Property programs.

Brief by Treasury, Feb. 1, 2001, at 4–5. Should the Court not deem such orders appropriate, the Treasury Department proposes in the alternative that it be granted a "30–day extension of time in which to produce documents and/or propose to the Court a timeframe by which other documents might still be produced." *Id.* at 5.

In support of this motion, the Treasury Department provides an exhaustively explained account (36 pages) of the potentially responsive documents and the time necessary to locate the documents (in person hours). As well, Treasury describes the searching that has already been completed, the quantity of documents found to be responsive, and (in many cases) the amount of time spent searching.

Since the Treasury Department filed its motion on February 1, 2001, the plaintiff has filed two briefs (totaling 35 pages) responding to the Department's subpoena modification and interest payment arguments. At no point, not even in passing, does the plaintiff, address, oppose, or even reference the Treasury Department's protective order motion. Although the Court is therefore free to consider this issue as conceded, *see* Local Civil Rule 7.1(b); *Weil v. Seltzer,* 873 F.2d 1453, 1459 (D.C.Cir.1989), the Court nonetheless orders the plaintiff, within 15 days of this date, to show cause why the Treasury Department's *motion for protective orders* should not be granted. If indeed the plaintiff does file such a memorandum, the Treasury's response thereto shall be due 10 days after the memorandum's filing. If, however, no opposition is filed within 15 days of this date, the Court will consider the motion conceded. In addition, the Treasury shall not be obligated to produce materials in response to the June 5, 1998 subpoena, as modified further herein, until further order from the Court.

**12**

### III. CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that the Treasury Department's motion to modify the June 5, 1998 subpoena [151–1] is GRANTED in part and DENIED in part; further, it is

ORDERED that the June 5, 1998 subpoena issued in this case, and amended on September 14, 2000, be further amended as described herein; further, it is

ORDERED that the Treasury Department's motion for a stay of discovery pending resolution of the protective order issue [152–1] is GRANTED; further, it is

ORDERED that the Treasury Department's motion to amend the briefing schedule in light of recent legislation [153–1] is GRANTED; further, it is

ORDERED that the plaintiff's motion to compel the payment of post-judgment interest [159–1] is DENIED; further, it is

ORDERED that the Department of the Treasury's motion to extend time filed on December 18, 2000 [146–2] is GRANTED. Further, the Clerk of the Court is

ORDERED to terminate the plaintiff's motion to show cause filed on November 20, 2000 [144–1]. This motion was dismissed without prejudice on November 22, 2000[141].

SO ORDERED.