**Stephen M. FLATOW, Plaintiff,**

v.

**THE ISLAMIC REPUBLIC OF IRAN, et al., Defendants.**

**C.A. No. 97–396 (RCL).**

United States District Court, District of Columbia.

Aug. 13, 2001.

Thomas Fortune Fay, Steven R. Perles, Washington, DC, for plaintiff.

Victor Holm, Silver Spring, MD, Andrea Gail Cohen, U.S. Department of Justice, Federal Programs Branch, Sanjay Manohar Bhambhani, David Mendel, U.S. Department of Justice, Carol Federighi, Vincent Morgan Garvey, U.S. Department of Justice, Civil Division, Rodney H. Glover, Gardner, Carton & Douglas, Washington, DC, Lee Davis Thames, C. Maison Heidelberg, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, MS, for defendants.

## MEMORANDUM AND ORDER

LAMBERTH, District Judge.

Now before the Court is the Department of the Treasury's motion for a protective order. On June 5, 2001, the Court ordered the plaintiff to show cause why the protective order should not be granted. *See Flatow v. The Islamic Republic of Iran*, 201 F.R.D. 5 (D.D.C.2001). The plaintiff submitted a brief pursuant to that Order, and the Treasury Department responded to that brief. After a full consideration of the parties' memoranda, the applicable law, and for the following reasons, the Court GRANTS the Treasury Department's motion.

## I. BACKGROUND

In an effort to satisfy a several hundred million dollar judgment against the defendants, the plaintiff sought from the Treasury Department information pertaining to the defendants' assets. To this end, the plaintiff issued a subpoena on June 5, 1998. Since then, the Treasury Department has searched its records and produced certain information. With respect to future searching and production however, the Treasury Department seeks a protective order to relieve it of "any further obligation to produce documents under the plaintiff's June 5, 1998 subpoena, as modified by the Court." *See* Brief for Department of Treasury, June 26, 2001, at 4. The Department argues that such production

would be unduly burdensome. The Court now considers this issue.

## II. ANALYSIS

### A. Standard of Review

A court may issue a protective order to protect an individual from discovery if the discovery "subjects [the individual] to [an] undue burden." Fed.R.Civ.P. 45(c)(3). In identifying an "undue burden", a court is to look at several factors, such as

> "[the] relevance [of the materials sought], the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed."

*Alexander v. FBI*, 186 F.R.D. 21, 34 (D.D.C. 1998) (citing *United States v. International Bus. Machines, Corp.*, 83 F.R.D. 97, 104 (S.D.N.Y.1979)). *See also Linder v. Calero–Portocarrero*, 180 F.R.D. 168, 173 (D.D.C. 1998). When the burdensomeness of a subpoena is at issue, the onus is on the party alleging the burden to prove that the subpoena violates Rule 45. *See Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 403 (D.C.Cir.1984).

### B. The Instant Protective Orders

In the case at hand, the Treasury Department seeks protective orders for four different Treasury divisions: (1) the Office of Foreign Asset Control ("OFAC") and OFAC Chief Counsel's Office, (2) the Office of the Comptroller of the Currency, (3) the United States Customs Service, and (4) various Departmental Offices having information on the Lend Lease programs. The Court finds protective orders to be merited in each instance.

Before explaining why protective orders are merited in each case, the Court notes that today's decision is predicated heavily on the plaintiff's utter failure to present a meaningful challenge to Treasury's motion. Treasury's motion for a protective order was made on February 1, 2001, and supported by over 30 pages of detailed explanation concerning the nature of the information sought and the burdens of producing such information. As of this date, over six months later,

the plaintiff has only filed 3 pages on the issue, and those pages were only filed after the Court ordered the plaintiff to show cause why the protective orders should not be entered. In short, the Court considers the Treasury Department's motion virtually uncontested. However, should the plaintiff, subsequent to this Memorandum and Order, come forward with detailed arguments why protective orders should not be in place, the Court, in the exercise of its broad discretion, *see Northrop Corp.*, 751 F.2d at 403, will consider such arguments.

### 1. OFAC and OFAC Chief Counsel's Office

■ Under the June 5, 1998 subpoena, as modified by this Court on June 5, 2001, only two categories of information within OFAC and OFAC Chief Counsel's Office would be responsive to the subpoena: (1) documents that pertain to Iranian property that is outside the jurisdiction of the United States and not in the possession or control of persons subject to the jurisdiction of the United States, and (2) documents that pertain to Iranian property that falls within the narrow exceptions to the President's regulatory authority under IEEPA, 50 U.S.C. § 1702(b). It is very unlikely that a search of either category of information will yield information useful to the plaintiff.

With respect to the first category of information, the information will not likely be useful because foreign countries rarely enforce punitive damages awards against foreign states. *See* International Law Commission's Draft Articles on Jurisdictional Immunities of States and Their Property, and Commentary, 2(2) Y.B.I.L.C. 13 (1991), Article 12, at 102–06. With respect to the second category, OFAC records will not likely be useful because information not covered by the President's IEEPA regulatory authority is not required to be reported to OFAC. Thus, although such information might theoretically exist, it is unlikely it would be in the possession of OFAC.

Although the modified June 5, 1998 subpoena thus seeks information of relatively little use from OFAC and OFAC Chief Counsel's office, it does not therefore follow that the offices are relieved from searching for and producing the information. Rather, the Court must balance this with other factors attendant to the production of documents. In this case, the Treasury Department has proffered affidavits estimating the likely search times for each category of information. The Department estimates that OFAC's search under the narrowed subpoena would take approximately 885 person-hours (111 eight-hour days), and OFAC Chief Counsel's search would take approximately 335 person-hours (42 eight-hour days). Further, the estimate for the Chief Counsel's office would inevitably be augmented by the time necessary to conduct privilege reviews.

Thus, not only would the information sought by the plaintiff be of relatively little use, the production of it would entail extensive labor by OFAC and the OFAC Chief Counsel's office. The Treasury Department's motion for a protective order with respect to these offices is therefore merited.

### 2. The Office of the Comptroller of the Currency

■ The Office of the Comptroller of the Currency ("OCC") has broad authority over the chartering, supervision, and regulation of our national banks. Thus, it has an extensive store of "bank examination reports", 363 of which the OCC has turned over to the plaintiff for his review. These 363 reports are from 1980 and 1981, years in which national banks were specifically ordered to report to the OCC their financial connections with Iran or Iranian banks. Beyond these particular reports, almost 6000 reports have yet to be reviewed to determine if any of them are responsive to the June 5, 1998 subpoena. The Court finds that the review of these reports is unduly burdensome. To review the reports would take 1,500 hours of labor (180 eight-hour days) and Treasury's affidavits suggest that there is only a small offsetting likelihood that the reports would contain responsive information.[1]

---

1. Although the Court deems 1500 person-hours of work to be unduly burdensome in these cir-

cumstances, it is unclear why the reports could not merely be made available to the plaintiff for

Besides the bank examination reports, the OCC has other categories of records that may contain responsive information. However, affidavits by the Treasury Department make clear that these reports—such as corporate application files, bank examination work papers, and bank correspondence files—are exceedingly voluminous and unlikely to contain even small amounts responsive data. *See* Brief for Treasury Department, Feb. 1, 2001, at 41. For instance, in an initial office survey, OCC uncovered only a single bank in which an entity owned by Iran claimed an ownership interest. Upon reviewing this bank's particular files, a task that took 24 person-hours, only a single responsive document was uncovered. Thus, a search of the files for the thousands of banks that OCC oversees would entail a monumental amount of effort and yield a veritable paucity of information.

The Court thus finds that the OCC is entitled to a protective order relieving it from the duty to produce further material under the June 5, 1998 subpoena.

### 3. The United States Customs Service

■ The United States Customs Service maintains extensive records of national imports and exports. As such, it is certainly possible that it would have information responsive to the June 5, 1998 subpoena. To the contrary, however, sworn affidavits by the Treasury Department aver that an initial search (taking 472 person hours) failed to find responsive documents in three out of the Custom's four major categories of records. Based on this information, the Court therefore finds that Customs need not further review these categories of information. The paucity of responsive data, when compared to the length of time spent searching, renders the subpoena unduly burdensome with respect to these categories of information.[2]

With respect to the files of information where potentially responsive documents were located during an initial search, the Treasury has proffered an affidavit explaining that, though the information found is arguably responsive to the subpoena, it will very likely be useless in pursuing the satisfaction of the plaintiff's debt. This is because the information, for the most part, concerns transactions that are 10–15 years old. Without fully countenancing the Treasury's opinion on the usefulness of information, the Court nonetheless finds that an undue burden would be imposed by further searching because the searching would take an enormous amount of time—575 eight-hour days. In light of this incredible amount of searching time, the Court finds that Customs need not produce further documents sought by the June 5, 1998 subpoena, as modified.

### 4. Departmental Offices Having Information on the Lend Lease Programs

■ The Treasury Department has documents relating to five lend-lease agreements entered into by Iran and the United States between 1945 and 1948. Although the documents are arguably responsive to the narrowed subpoena, it is not likely that they would ultimately be useful to the plaintiffs because they concern property that was transferred to Iran over 50 years ago. As such, any success the plaintiff might have with the information would necessarily depend on the property still existing and still being owned by Iran. Even if this unlikely situation were in fact the case, the plaintiff would still face the unlikely prospect of attempting to attach the property in an Iranian court. As explained above, this is an exceedingly improbable prospect.

Beyond being likely useless, production of the documents would also require attorney resources, some 48 person-hours. Although this is not an extensive amount of time, the extreme unlikeliness of the information being

his own review, under an appropriate confidentiality order. Thus, although the Court grants the Treasury Department's motion on this issue, the Court is open to its reconsideration upon motion to modify this protective order by the plaintiff.

2. However, as already explained in note 1, *supra,* the Court is open to the possibility that the documents could merely be made available to the plaintiff for his own search under an appropriate confidentiality order. Such possibilities, however, will only be considered upon an appropriate motion to modify this order by the plaintiff.

useful makes the production of these documents unduly burdensome.

The Court therefore finds a protective order merited with respect to these categories of information.

### III.  CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that the Treasury Department's motion for a protective order [151–2] is GRANTED; further, it is

ORDERED that the following Treasury Offices are relieved from searching for and producing documents pursuant to the plaintiff's June 5, 1998 subpoena:

(1)  Office of Foreign Assets Control

(2)  Office of Foreign Assets Control, Chief Counsel's Office

(3)  Office of the Comptroller of the Currency

(4)  United States Customs Service.  Further, it is

ORDERED that no Treasury Department office need search for or produce documents related to the Lend Lease Programs.

SO ORDERED.