305 F.3d 1249
 Stephen M. FLATOW, Individually and as Administrator of the Estate of Alisa Michelle Flatow, deceased, Appellant,
v.
ISLAMIC REPUBLIC OF IRAN, The Ministry of Foreign Affairs, et al., Appellees.
 No. 01-7101.
 No. 01-7149.
 United States Court of Appeals, District of Columbia Circuit.
 Argued September 6, 2002.
 Decided October 8, 2002.
 
 Appeals from the United States District Court for the District of Columbia (No. 97cv00396).
 Steven R. Perles argued the cause for appellant. With him on the brief was Thomas Fortune Fay.
 H. Thomas Byron III, Attorney, U.S. Department of Justice, argued the cause for appellee United States. With him on the brief were Roscoe C. Howard, Jr., U.S. Attorney, and Douglas Letter, Litigation Counsel, U.S. Department of Justice.
 Before: EDWARDS, HENDERSON, and ROGERS, Circuit Judges.
 Opinion for the Court filed by Circuit Judge ROGERS.
 ROGERS, Circuit Judge:
 
 
 1
 This is an appeal from an order denying a motion to compel payment of post-judgment interest by the United States Treasury Department, and narrowing the scope of a third-party subpoena under Federal Rule of Civil Procedure 45. See Flatow v. Islamic Republic of Iran, 196 F.R.D. 203 (D.D.C.2000). We dismiss the appeal of the claim for post-judgment interest for lack of jurisdiction, and vacate the district court's opinion on that issue, because the district court lacked jurisdiction to entertain a claim against a nonparty. We affirm the district court's interpretation of "regulated" Iranian property under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-02, and the order limiting the subpoena and the corresponding protective order.
 
 I.
 
 2
 Stephen M. Flatow obtained a default judgment for more than $225 million in compensatory and punitive damages awards in a tort action that he filed against the government of Iran and several of its officials pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605(a)(7). See Flatow v. Islamic Republic of Iran, 999 F.Supp. 1, 5 (D.D.C. 1998). Flatow's attempts to collect the judgment were unsuccessful.[1] Subsequently, on October 28, 2000, the Victims of Trafficking and Violence Protection Act of 2000, Pub.L. No. 106-386, 114 Stat. 1464 (2000) ("Victims Protection Act") became law, affording certain victims of terrorists' acts an opportunity to recover funds from the United States to satisfy their outstanding judgments.[2] One month later, on November 28, 2000, Flatow applied for such funds, electing 100% recovery of the amount of compensatory damages plus post-judgment interest. See Victims Protection Act, § 2002(a)(1)(B). His application was approved, and on January 4, 2001, the Treasury Department transferred to Flatow more than $26 million, representing the compensatory damages award and post-judgment interest on that portion of the judgment. As a condition of receiving funds from the United States, Flatow was required under § 2002(a)(2)(D) of the Victims Protection Act to relinquish "all rights to execute against or attach property that is ... subject to section 1610(f)(1)(A) of title 28, United States Code."[3]
 
 
 3
 Both the scope of Flatow's election of payment and the scope of his relinquishment of the right to attach Iranian assets are at issue. Flatow contends that the district court erred in interpreting the Victims Protection Act first, by denying his motion to compel payment of post-judgment interest on the punitive damages award, which we address in Part II, and second, by narrowing his subpoena because he would be unable to attach Iranian property that is regulated by the United States, which we address in Part III.
 
 II.
 
 4
 Flatow contends that the district court ignored the plain language of § 2002(a)(1)(B) of the Victims Protection Act in denying his motion to compel the Treasury Department to pay post-judgment interest on his punitive damages award. We do not reach the merits of this contention for lack of jurisdiction.
 
 
 5
 The United States filed a Statement of Interest in the district court on July 23, 1998, in light of Flatow's writs of attachment on three parcels of real estate in the District of Columbia that were diplomatic properties of Iran and that had been held in the custody of the State Department since 1980. The Statement explained that it was submitted solely to protect the United States' interests and to advise the court of its legal obligations with respect to the writs under United States law and international agreements. For example, the Statement argued that the rental of diplomatic residences did not make them commercial properties, and that § 1610(b) is inapplicable because Flatow is seeking attachment of "property in the United States of a foreign state," which is defined in § 1610(a). The Statement sought vacation of the attachments and quashing of the accompanying writs.[4] The Statement further stated that the United States was not appearing on behalf of Iran and "expressly condemns the acts that brought about the judgment in this case."
 
 
 6
 In response, Flatow filed a motion to compel payment by the Treasury Department of post-judgment interest on the punitive damages portion of his judgment against Iran. The United States, in turn, argued that Flatow could not convert litigation regarding his Rule 45 subpoena into a proceeding involving an unrelated claim for monetary relief under § 2002(2) of the Victims Protection Act against a non-party, and alternatively, that the United States had not waived its sovereign immunity to suits of this sort in the district court.
 
 
 7
 The district court did not address the United States' objection to its jurisdiction, ruling instead that Flatow had waived his right to recover interest on his punitive damages award. Flatow v. Islamic Republic of Iran, 201 F.R.D. 5, 11 (D.D.C. 2001). This was error because the court lacked jurisdiction to hear or decide the merits of Flatow's motion to compel a nonparty.
 
 
 8
 "The principle that courts lacking jurisdiction over litigants cannot adjudicate their rights is elementary...." In re Sealed Case, 141 F.3d 337, 341 (D.C.Cir. 1998). The Federal Rules of Civil Procedure provide that "[t]here shall be one form of action to be known as `civil action'" and such an action shall be commenced by filing a complaint with the court, with related service, answer, and motions obligations thereafter. See Fed. R.Civ.P. 2, 3, 4, 7(a); see also 1 MOORE'S FEDERAL PRACTICE §§ 3.02[2], 3-7 (3d ed.2000). Under Federal Rule of Civil Procedure 10(a), the names of all parties must appear in the complaint filed in the district court. As in Peralta v. U.S. Attorney's Office, 136 F.3d 169 (D.C.Cir.1998), "the district court lost track of the identity of the `defendant' in this litigation." Id. at 171.
 
 
 9
 Flatow never named the United States or any agency or officer of the federal government as a defendant in his tort action against Iran under the FSIA. He does not claim to have served the United States or the Treasury Department with a summons, much less to have made a demand on the Treasury Department for post-judgment interest on his punitive damages award prior to filing his motion to compel payment. Nor did Flatow amend his complaint to add the United States as a party, and the district court docket does not indicate that the United States was added as a party through joinder or intervention.
 
 
 10
 Furthermore, even if the filing of the Statement were viewed as an appearance by the United States, see 28 U.S.C. § 517,[5] it clearly was a limited appearance, focusing on the attachments and not the merits of the underlying tort action. In addition, the United States presented a jurisdictional objection to Flatow's motion to compel. See Fed.R.Civ.P. 12(b); see also Chase v. Pan-Pacific Broad. Inc., 750 F.2d 131 (D.C.Cir.1984). Cf. Land v. Dollar, 188 F.2d 629, 632 (D.C.Cir.1951). Neither could the filing of the Statement of Interest suffice to make the United States a de facto intervenor, assuming the validity of that concept, for the United States was not present throughout every stage of the proceedings, its interests were not synonymous with those of the named Iranian defendants, and it did not behave as a party in the district court. See Peralta, 136 F.3d at 174. Under the circumstances, the United States took no action that subjected it to the general jurisdiction of the district court. See Dry Clime Lamp Corp. v. Edwards, 389 F.2d 590, 596-97 (5th Cir.1968); McQuillen v. Nat'l Cash Register Co., 112 F.2d 877, 881-82 (4th Cir.1940); Salmon Falls Mfg. Co. v. Midland Tire & Rubber Co., 285 F. 214, 217-18 (6th Cir.1922); Grable v. Killits, 282 F. 185, 194 (6th Cir.1922).
 
 
 11
 Consequently, the Rule 45 subpoena modification proceeding could not provide a substitute for a properly initiated civil action seeking particular relief, as authorized by statute. The district court, therefore, was without jurisdiction to hear or decide the question raised by Flatow's motion, and the district court's opinion on the merits of his claim should be vacated.
 
 III.
 
 12
 On June 5, 1998, Flatow served a third-party subpoena on the Treasury Department, pursuant to Federal Rule of Civil Procedure 45, to produce "[a]ll documents of any type or description pertaining to any assets which any of the named defendants... have or ever had or ... asserted or alleged any interest, claim, ownership right or security interest" in as well as assets in the custody or control of the defendants, or that constituted "`blocked assets' of the ... defendants." Although the Department objected that the subpoena was overly broad and unduly burdensome, the district court largely rejected that challenge and ordered the Department to comply with the subpoena. See Flatow, 196 F.R.D. 203. In early 2001, however, the Department moved for modification of the subpoena based on Flatow's relinquishment of certain attachment rights under § 2002(a)(2)(D) of the Victims Protection Act, and also requested that certain offices within the Department be protected against further discovery under the subpoena.
 
 
 13
 The district court ruled that the subpoena was overbroad in violation of Rule 45. See Flatow, 201 F.R.D. at 8. The court reasoned that because Flatow relinquished his right to execute or attach various types of Iranian property under his § 2002(a)(1)(B) election, information about such property was irrelevant to his goal of collecting punitive damages. Id. The court rejected Flatow's argument that the Department had a mandatory duty to assist the court in locating Iranian assets under § 1610(f)(2)(A) (as amended by § 2002(f) of the Victims Protection Act) because § 2002(a)(2)(D) of the Victims Protection Act prohibited Flatow from attaching some of those very assets. Id. at 9. The court also rejected Flatow's argument that the property enumerated in § 2002(a)(2)(D) does not include Iranian commercial property or property not within the custodial control of the United States. Id. The court accordingly modified the subpoena, quoting § 2002(a)(2)(D), so as not to require the production of information relating to "property that is at issue in claims against the United States before an international tribunal, that is the subject of awards rendered by such tribunal, or that is subject to section 1610(f)(1)(A) of Title 28, United States Code." Id.[6]
 
 
 14
 In his brief Flatow contends that the district court incorrectly interpreted the scope of his relinquishment of attachment rights under the Victims Protection Act to include Iranian commercial assets within the United States that are outside the custodial control of the Treasury Department and of no governmental interest to the United States. He maintains that the district court's interpretation destroys Congress's intent to provide claimants a meaningful chance to satisfy punitive damage awards. Specifically, Flatow contends that his relinquishment of attachment rights did not destroy his right to attach two categories of Iranian government-controlled commercial property: (1) assets that may not leave the United States without a license, over which Iran continues to enjoy unregulated, domestic, commercial control, and (2) assets within the pre-approved exceptions to the federal blocking program.
 
 
 15
 At oral argument, however, the parties clarified that the sole legal issue presented with regard to the subpoena is whether Flatow's election under § 2002(a)(2)(D) of the Victims Protection Act required a relinquishment of Iranian property that is licensed by the federal government. On de novo review, see In re Sealed Case, 146 F.3d 881, 883 (D.C.Cir. 1998), we hold that the district court properly interpreted "regulated" Iranian property under the IEEPA and appropriately limited the scope of the subpoena pursuant to that interpretation. Because Flatow has conceded that the scope of the subpoena is not otherwise at issue, we need not address any abuse of discretion challenges to the district court's order.
 
 
 16
 The district court's modification of the subpoena repeats the language of § 2002(a)(2)(D) of the Victims Protection Act, which refers to 28 U.S.C. § 1610(f)(1)(A). Section 1610(f)(1)(A) provides that:
 
 
 17
 Notwithstanding any other provision of law ... and except as provided in subparagraph (B), any property with respect to which financial transactions are prohibited or regulated pursuant to section 5(b) of the Trading with the Enemy Act (50 U.S.C. App 5(b)), section 620(a) of the Foreign Assistance Act of 1961 (22 U.S.C. § 2370(a)), sections 202 and 203 of the International Emergency Economic Powers Act (50 U.S.C. 1701-1702), or any other proclamation, order, regulation, or license issued pursuant thereto, shall be subject to execution or attachment in aid of execution of any judgment relating to a claim for which a foreign state ... claiming such property is not immune under section 1605(a)(7).
 
 
 18
 28 U.S.C. § 1610(f)(1)(A) (emphasis added).
 
 
 19
 The scope of Flatow's relinquishment of attachment rights pursuant to § 1610(f)(1)(A) turns then on the meaning of the phrase "transactions [that] are prohibited or regulated" under IEEPA. A brief discussion of regulations promulgated pursuant to IEEPA makes clear that the district court properly narrowed the subpoena to exclude Iranian property subject to license by the federal government.
 
 
 20
 Acting pursuant to IEEPA's national emergency powers, President Carter, in response to the Iranian hostage crisis, declared a national emergency on November 14, 1979, and issued a series of Executive Orders that, among other things, blocked the removal or transfer of all Iranian property subject to U.S. jurisdiction. See Dames & Moore v. Regan, 453 U.S. 654, 663, 101 S.Ct. 2972, 2978, 69 L.Ed.2d 918 (1981). The President authorized the Treasury Department to promulgate regulations carrying out the blocking order. Id. Consequently, the Department's Office of Foreign Asset Control ("OFAC") administers two regulatory programs involving Iranian property: the Iranian Assets Control Regulations ("IACR") and the Iranian Transactions Regulations ("ITR"). See 31 C.F.R. Pts. 530, 560 (1980). The IACR broadly prohibits unauthorized transactions involving property in which Iran has any interest. 31 C.F.R. § 535.201. Such property may not be transferred, paid, exported, withdrawn, or otherwise dealt in except as provided by OFAC. Id. Unless authorized by a license issued by OFAC, any transaction within the terms of the IACR is prohibited. 31 C.F.R. § 535.101. Pursuant to the Algiers Accords, the Treasury Department established a general license that authorized post-1981 transactions "in which Iran or an Iranian entity has an interest." 31 C.F.R. § 535.579. The second regulatory program, the ITR, confirms the broad reach of OFAC's Iranian sanctions programs by establishing controls on Iranian trade, investments, and services. See 31 C.F.R. Pt. 560. However, the ITR does not apply to certain categories of transactions, such as personal communications, donations of particular humanitarian articles, and informational materials. 50 U.S.C. § 1702(b); 31 C.F.R. § 560.210. As under the IACR, there is a general prohibition under the ITR of unauthorized transactions, coupled with specific licenses permitting certain kinds of transactions. 31 C.F.R. §§ 560.505-560.535.
 
 
 21
 The fact that a transaction is authorized by an OFAC license confirms that it is "regulated" by IEEPA and by regulations or licenses issued pursuant thereto. Cf. Regan v. Wald, 468 U.S. 222, 233-34, 104 S.Ct. 3026, 3033-34, 82 L.Ed.2d 171 (1984). By the plain terms of the Treasury Department's regulations, the IACR establishes that virtually all property subject to the jurisdiction of the United States in which Iran has any interest is either prohibited or subject to a license of the United States. 31 C.F.R. § 535.101. Flatow's contention that the district court should have held that the government was collaterally estopped from claiming in its Notice of November 22, 2000, supra note 3, that he cannot attach licensed Iranian property was first raised in his reply brief, and thus we do not address it. See, e.g., Steel Joist Inst. v. OSHA, 287 F.3d 1165, 1166 (D.C.Cir.2002).
 
 
 22
 Accordingly, we dismiss Flatow's contention that he is entitled to post-judgment interest on his punitive damages award for lack of jurisdiction and vacate the district court's opinion on that issue. We affirm the district court's interpretation of "regulated" Iranian property under IEEPA and the order limiting the subpoena to this legal interpretation and the corresponding protective order.
 
 
 
 Notes:
 
 
 [1]
 See Flatow v. Islamic Republic of Iran, 76 F.Supp.2d 28 (D.D.C. 1999); Flatow v. Islamic Republic of Iran, 76 F.Supp.2d 16 (D.D.C. 1999); Flatow v. Islamic Republic of Iran, 74 F.Supp.2d 18 (D.D.C.1999).
 
 
 [2]
 The Victims Protection Act offered two options for payment. As relevant here, § 2002(a)(1) of the statute provides:
 Subject to subsections (b) and (c), the Secretary of the Treasury shall pay each person described in paragraph (2), at the person's election —
 (A) 110 percent of compensatory damages awarded by judgment of a court on a claim or claims brought by the person under section 1605(a)(7) of title 28, United States Code, plus amounts necessary to pay post-judgment interest under section 1961 of such title ... [or]
 (B) 100 percent of the compensatory damages awarded by judgment of a court on a claim or claims brought by the person under section 1605(a)(7) of title 28, United States Code, plus amounts necessary to pay postjudgment interest, as provided in section 1961 of such title....
 Section 2002(a)(2)(C) provides that a person electing to receive payment for 110% of compensatory damages, "relinquishes all rights and claims to punitive damages awarded in connection with such claim or claims."
 
 
 [3]
 Section 2002(a)(2)(D) provides that a person receiving payment for 100% of compensatory damages,
 relinquishes all rights to execute against or attach property that is at issue in claims against the United States before an international tribunal, that is the subject of awards rendered by such tribunal, or that is subject to section 1610(f)(1)(A) of title 28, United States Code.
 By Notice published in the Federal Register on November 22, 2000 to "Persons Who Hold Certain Categories of Judgments Against Cuba or Iran," the Office of Foreign Assets Control in the Treasury Department ("OFAC") explained that an applicant who elects the 100% option is barred from seeking to attach "virtually all Iranian ... assets within the jurisdiction of the United States." 65 Fed.Reg. 70382, 70384. The Notice stated that the Victims Protection Act required relinquishment of rights to attach or execute against property subject to 28 U.S.C. § 1610(f)(1)(A), which "applies to `any property with respect to which financial transactions are prohibited or regulated pursuant to... the International Emergency Economic Powers Act (50 U.S.C. §§ 1701-1702) (IEEPA), or any other proclamation, order, regulation, or license issued pursuant thereto.'" Id. (quoting 28 U.S.C. § 1610(f)(1)(A)). The Notice explained, as well, the comprehensive sanctions programs against Iran under IEEPA, such that "virtually every transaction involving Iranian ... property within the jurisdiction of the United States is either `prohibited' or `regulated,' i.e., permitted only by a general license in regulations promulgated by" OFAC, or by a "specific license issued by OFAC." Id.
 
 
 [4]
 The Statement of Interest asserted that the three properties are (1) immune from attachment under the Foreign Missions Act, 22 U.S.C. §§ 4301-4316, and the FSIA, 28 U.S.C. §§ 1602-1611; (2) "blocked" under Executive Order 12170, 44 Fed.Reg. 65729 (Nov. 15, 1979), issued pursuant to IEEPA, 50 U.S.C. §§ 1701-1706; (3) subject to ongoing proceedings between Iran and the United States in the Iran-U.S. Claims Tribunal; and (4) that attachment would interfere with the ability of the United States to discharge its obligations under the Vienna Convention on Diplomatic Relations, T.I.A.S. No. 7502, 23 U.S.T. 3227 (1964), and jeopardize important foreign policy interests of the United States
 
 
 [5]
 Under 28 U.S.C. § 517, the United States may appear in any court of the United States "to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States."
 
 
 [6]
 The district court also issued a protective order that Flatow does not challenge, requesting only that the scope of the order be coextensive with the scope of relinquishment of attachment rights under the Victims Act § 2002. Appellant's Br. At 6, 34