Stephen M. FLATOW, Plaintiff,

v.

THE ISLAMIC REPUBLIC OF IRAN, et al., Defendants.

No. Civ.A. 97–396 (RCL).

United States District Court, District of Columbia.

Sept. 14, 2000.

Steven R. Perles, Washington, DC, Thomas Fortune Fay, Washington, DC, for plaintiff.

Vincent Morgan Garvey, David Mendel, U.S. Department of Justice, Civil Division, Washington, DC, for defendant.

### *MEMORANDUM AND ORDER*

LAMBERTH, District Judge.

This matter comes before the Court as part of the plaintiff's attempt to obtain satisfaction of a money judgment entered in this Court on March 11, 1998. Plaintiff moves the Court to (1) vacate the Consent Protective Order entered on July 30, 1999, (2) compel the Department of the Treasury to produce documents to the Court covered by the June 5, 1998 subpoena, and (3) sanction the Department of Treasury for noncompliance with the subpoena.

For the reasons stated below, plaintiff's motion to compel is GRANTED in part and DENIED in part. This Court modifies the June 5, 1998 subpoena and orders the Department of the Treasury to produce documents covered by the modified subpoena. Plaintiff's motion to vacate the protective order, and for sanctions, is DENIED.

### *BACKGROUND*

#### I. The Plaintiff's Subpoena

After receiving a judgment of over $225 million, the plaintiff began the formidable task of collecting his damages. As part of this process, the plaintiff sought to discover records of Iran's assets in the files of the United States Department of the Treasury. Thus, on June 5, 1998, the plaintiff issued a third-party subpoena to the Treasury Department seeking all documents pertaining to the finances of the defendants. *See* Subpoena, June 5, 1998.

Upon receiving the subpoena, the Treasury Department made various objections, asserting in a letter to the plaintiff that the request was "unduly burdensome and overly broad." *Letter from John Niemeyer to Thomas Fortune Fay,* June 19, 1998. While the Treasury Department produced some records covered by the subpoena, it maintained throughout the production process that it was not waiving its initial objections. The Treasury Department continues to press these objections, which the Court addresses in this opinion.

#### II. The Consent Protective Order

In early 1999, the plaintiff made a specific request pursuant to the subpoena to the Treasury Department for information pertaining to the assets of the banks Saderat, Sepah, and Melli. As many of the requested documents contained highly confidential information, an agreement was entered into and approved by the Court on July 30, 1999 which prescribed the conditions of production and handling for the bank documents in question. This agreement, the Consent Protective Order, covered a wide array of matters, ranging from the permissible uses of the documents to the persons who would have access to them. *See Amended Consent Protective Order,* July 30, 1999.

### *ANALYSIS*

#### I. Plaintiff's motion to vacate the Consent Protective Order

This Court is at a loss to understand the plaintiff's interest in the vacating of the Consent Protective Order (the "Order"). The plaintiff proffers no rationale in support of his plea, and the Court is unable to divine a rationale on its own.

As described above, the Order simply lays out the conditions necessary to secure the confidentiality of sensitive government documents involving three foreign banks. For example, the Order states at the outset that the documents in question "shall be used only by those [connected to the litigation] for the sole purpose of this litigation and shall not be disclosed ... to anyone for any other purpose or reason whatsoever." *Id.* ¶ 1 (July 30, 1999). The Order goes on to specify the plaintiff's duty to file any matters involving the documents under seal and to return the documents at the conclusion of the litigation. *Id.* ¶¶ 3, 5.

The Order's prescriptions, though specific, focus exclusively on the handling of documents and do not inhibit the plaintiff's pur-

suit of his litigation objectives. Thus, it is difficult to understand the nature of the plaintiff's objection to the order. As this Court has stated before: "The court will not vacate its protective order in the absence of a legal argument explaining why the order, on its merits, was not correctly decided." *Kauffman v. Anglo–American School of Sofia*, 1992 WL 200025, at *7 (D.D.C.1992). Thus, the plaintiff's motion to vacate the Consent Protective Order must be denied.[1]

## II. Plaintiff's motion to compel the Treasury Department to produce documents.[2]

Since first issued on June 5, 1998, the plaintiff's subpoena has been the source of continued disagreement between the plaintiff and the Treasury Department. The plaintiff alleges that his subpoena is facially valid and that the Treasury Department's failure to comply "displays contempt by the Administration for this Court and the citizens that this government is sworn to serve." Brief for Plaintiff at 8, June 29, 2000. The Treasury Department demurs, asserting that the subpoena is facially invalid because it is "unduly burdensome and overly broad." Letter from John Niemeyer to Thomas Fortune Fay, June 19, 1998.

Any analysis of this issue must begin with the text of the subpoena. The subpoena issued on June 5, 1998 requested the following documents:

1. All documents of any type or description pertaining to any assets which any of the named defendants ... have or ever had or with respect to which any named defendant has asserted or alleged any interest, claim, ownership right or security interest;

2. All documents of any type or description indicating ownership of assets by any of the ... named defendants;

3. All documents of any type or description pertaining to any assets of the ... named defendants which are in the custody, safekeeping, care, control, or constitute "blocked assets" of any of the ... named defendants;

4. All documents indicating the location description, or nature of any assets of the ... named defendants;

5. All lists of assets or documents pertaining to assets of any of the ... named defendants which are in the possession of the Department of the Treasury or any agency of department of the government of the United States.

Subpoena (June 5, 1998).

According to Rule 45(c)(3) of the Federal Rules of Civil Procedure, a court "shall quash or modify the subpoena if it ... subjects a person to undue burden." FRCP 45(c)(3). This Court is not alone in declaring that an "undue burden" can be identified through looking at factors such as "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described

---

1. Although it is immaterial to this Court's decision, it is worth noting that one court has employed a structured test to determine if a protective order should be vacated. *See Bayer AG & Miles, Inc. v. Barr Labs., Inc.*, 162 F.R.D. 456, 462–63 (S.D.N.Y.1995). That court held that, in determining whether to vacate a consent protective order, a court should consider four factors: (1) the nature of the protective order, (2) the foreseeability of the modification requested, (3) the parties' reliance on the protective order, and (4) the presence of good cause for the vacation. Evaluating the plaintiff's motion in light of these factors, this Court sees no ground to vacate the Order.

2. In his brief, plaintiff styles his motion as a motion for "enforcement of subpoena." Brief for Plaintiff at 1, June 29, 2000. Further, the plaintiff requests that the documents in question be produced to the Court to be "kept under seal." *Id.* at 1.

The briefs on this motion and the history of these parties' dealings on this issue reveal that the crux of the dispute is whether the June 5, 1998 subpoena is valid under Rule 45 of the Federal Rules of Civil Procedure. Accordingly, this Court treats the plaintiff's motion for "enforcement" as a traditional "motion to compel." Regarding the plaintiff's request that the documents be produced to the Court, this Court declines to order such an action. While any destruction of documents under subpoena is not to be condoned, the Treasury Department's prompt and professional response to its admitted error gives this Court sufficient confidence not to require the extraordinary measure requested by the plaintiff.

and the burden imposed." *Alexander v. FBI*, 186 F.R.D. 21, 34 (D.D.C.1998) (citing *United States v. International Bus. Machines Corp.*, 83 F.R.D. 97, 104 (S.D.N.Y. 1979)). *See also Linder v. Calero–Portocarrero*, 180 F.R.D. 168, 173 (D.D.C.1998). When the burdensomeness of a subpoena is at issue, the onus is on the party alleging the burden to prove that the subpoena violates Rule 45. *See Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 403 (D.C.Cir. 1984). A showing of such a burden must be specific. As this Court has held before, assertions of a burden without "specific estimates of staff hours needed to comply" will be "categorically rejected." *Association of Am. Physicians & Surgeons v. Clinton*, 837 F.Supp. 454, 458 n. 2 (D.D.C.1993). *See also Alexander v. FBI*, 194 F.R.D. 305, 315 (D.D.C.2000); *Lohrenz v. Donnelly*, 187 F.R.D. 1, 4 (D.D.C.1999).

■ Viewing the plaintiff's subpoena under these standards, it is clear that some provisions constitute an undue burden on the Treasury Department. First, and most glaringly, paragraph 5 of the subpoena not only asks the Treasury Department for asset records, but demands such information from "any agency or department of the government of the United States." A third-party subpoena to a government agency cannot compel the production of documents not in the custody and control of the subpoenaed agency.

■ Second, the subpoena puts the Treasury Department in a catch–22 position by demanding records of the Internal Revenue Service. The IRS is prohibited by statute from releasing personal tax records, which, by the terms of the subpoena, are requested by the plaintiff. *See* 26 U.S.C. § 6103 (1994). It is surely an undue burden for a subpoena to demand a violation of federal law.

■ Before leaving the question of undue burden, the Court now addresses several of the Treasury Department's arguments which the Court finds unpersuasive. First, the Department claims that one of its offices, the Office of Foreign Assets Control ("OFAC"), will be "substantially impede[d]" in the "ac-

complishment of its mission." Third Declaration of R. Richard Newcomb, at 14 (July 26, 2000). The Department becomes slightly more specific at another point, claiming that compliance with the subpoena "clearly would require a significant commitment of Treasury personnel." *Id.* at 6. Second, regarding the Customs offices' compliance with the subpoena, the Department predicates its objection on the assertion that compliance would require many "thousands of person hours." *See* Declaration of Bonni Tischler, at 4, 6, 8 (July 25, 2000).

Such bare assertions of a burden do not satisfy the specificity requirement of an undue burden objection. As noted above, the Department must come forth with specific estimates. The specific-estimate requirement first assists courts in their difficult task of maintaining a fair and orderly discovery process. Second, in an era of mammoth federal agencies, where *every* requested search may take "thousands of person hours," a specificity requirement deters the government from thwarting any search it dislikes or disagrees with. Although the sheer volume of records implicated by this subpoena may make the estimate itself seem burdensome, it need not be. A good faith "sampling" of the workload—that is, searching a small portion of the records and extrapolating the total search time therefrom—would allow one to make an estimate quickly and fairly. Or the Department can employ its own methods of estimation. Either way, a party objecting to a subpoena must come forward with something more than the Treasury Department has in this case.

Perhaps one solution in this case would have been to allow the plaintiff to search the records on his own. Both OFAC and Customs report that they have narrowed their records down to a point where most of the final searching would, out of necessity, be done by hand. The Treasury Department has asserted no reason why the relevant records cannot be made available to the plaintiff to complete the physical search. This would obviously save the Department what it claims will be many "thousands of person hours" while at the same time providing the plaintiff access to the information he is seeking. Of

course, there may be substantial confidentiality concerns with such an action, but this Court is (and has been) open to a protective order to remedy any such problems. Perhaps the documents in question are so proliferated with confidential information that a protective order would not be feasible. In any event, that issue cannot be broached until the Department makes an appropriate motion. What is clear now is that the Department has made no real effort to even properly address the question of burdensomeness, much less meet its burden of demonstrating any undue burden. Accordingly, plaintiff's motion to compel production of the subpoenaed documents must be granted insofar as that subpoena is modified by this order.

### III. Plaintiff's motion to sanction the Treasury Department for noncompliance with the subpoena

Plaintiff avers two grounds in his plea for sanctions. First, the plaintiff takes issue with the Treasury Department's recalcitrance in turning over the required documents. Second, and more specifically, the plaintiff correctly asserts that the Treasury Department has recently destroyed many documents covered by the subpoena.

### A. Sanctioning Powers Applicable to this Case

■ Federal district courts are empowered to issue sanctions in a multitude of ways. The facts of this case implicate three of those powers. First, sanctions may be imposed on a non-party in accordance with Federal Rule of Civil Procedure 45(e), which states: "Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt...." Case law within this jurisdiction makes it clear that a timely objection by a non-party to the subpoena is an "adequate excuse." See Alexander v. FBI, 186 F.R.D. 170, 180 (D.D.C.1999); In re The Exxon Valdez, 142 F.R.D. 380, 385 (D.D.C.1992). See also Pennwalt Corp. v. Durand–Wayland, Inc., 708 F.2d 492, 494 (9th Cir.1983).

■ Second, a court may issue sanctions in accordance with 28 U.S.C. § 1927 where counsel's behavior "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927 (1994). While some courts require bad faith as a prerequisite to sanctions, others require only recklessness. See United States v. Wallace, 964 F.2d 1214, 1218–19 (D.C.Cir.1992) (discussing split among the circuits). In any event, "all of the courts, including those applying a lesser standard, at minimum agree that unintended, inadvertent and negligent acts will not support an imposition of sanctions under section 1927." Alexander v. FBI, 192 F.R.D. 25, 31 (2000) (quoting Cruz v. Savage, 896 F.2d 626, 631 (1st Cir.1990)).

■ Third, a court may issue sanctions through the use of its "inherent power." See Chambers v. NASCO, 501 U.S. 32, 44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); Roadway Express, Inc. v. Piper, 447 U.S. 752, 764–66, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). As this court has recently stated, "the inherent powers of the court" permit a sanction only when "a party has acted in bad faith." Alexander v. FBI, 186 F.R.D. 188, 196 (D.D.C.1999); see also United States v. Wallace, 964 F.2d 1214, 1219 (1992). A court's inherent power can be exercised to police a wide variety of infractions, including, as is the matter in this case, the destruction of documents subject to a subpoena.

### B. Sanctions for Non–Production

■ The behavior of the Treasury Department in failing to promptly produce documents does not warrant a sanction. Under Rule 45, the Treasury Department is not sanctionable because it timely objected to the plaintiff's subpoena. Such an objection qualifies as an "adequate excuse" within the text of Rule 45. FRCP 45(e). Nor is the Department sanctionable under 28 U.S.C. § 1927. Even assuming that the Department's nonproduction could be construed to fall within the terms of section 1927 (which permit sanctions when counsel "multiplies the proceedings in any case unreasonably and vexatiously"), this Court does not find such action to be reckless or in bad faith. Finally, the Department's non-production of documents is not sanctionable under the Court's inherent

power because, as stated above, there is no evidence of bad faith on the part of the Treasury Department.

### C. Sanctions for Document Destruction

■■■■ The Department's destruction of documents, however, is a much more serious matter. It is one thing to make a good faith objection to a subpoena, it is quite another to destroy the documents in question in the meantime. The recipient of a subpoena has a duty to safeguard documents that are the subject of the request. As the parties to this action are all aware, the Treasury Department has fallen far short of its duty by destroying a substantial quantity of documents covered by the subpoena.

But it does not necessarily follow that sanctions are in order. Under the sanction powers applicable to this incident, sanctions may be imposed only if the Department acted in bad faith, or, depending on the applicable law, with recklessness. Although the Court is disappointed in the Department's care of its documents, it finds that the destruction was inadvertent at worst, and therefore does not merit sanctions.

The Court finds several factors persuasive in its finding of inadvertence. First, the documents were destroyed in coordination with an office renovation project, making it unlikely that an underhanded scheme was afoot. Second, as soon as the destruction was realized, the Department's General Counsel, Neal S. Wolin, did what malefactors normally wouldn't do: he informed the Justice Department and then the plaintiff himself. *See* Declaration of Neal S. Wolin at 2. Such dissemination of information belies any inference of a cover-up. Finally, the Department, at the direction of Mr. Wolin, took "several steps to prevent future accidental destruction of documents." *Id.* at 4. All of these factors, taken together, persuade this Court that the Department did not act recklessly or in bad faith in destroying a portion of its files sought by the subpoena.[3]

To be sure, this Court does not take lightly the destruction of any item necessary to pending litigation. Thus, while the court does not see fit to impose sanctions, it is still greatly disappointed in the Treasury Department's behavior. For this reason, any future destruction of documents, whether purported to be innocent or not, will be viewed with the utmost scrutiny by this Court.

### IV. Modification of the July 5, 1998 subpoena

Although this Court has found the plaintiff's subpoena violative of Rule 45, it need not quash it. Rather, the text of Rule 45(c)(3)(A) as well as judicial economy dictate that a trial court should, "when appropriate, consider the possibility of modifying the subpoena rather than quashing." *Northrop Corp.*, 751 F.2d at 403. *See* FRCP 45(c)(3)(A) ("The court by which a subpoena was issued shall quash or modify the subpoena if it ... subjects a person to an undue burden.").

In modifying the request for documents, the Court relies on its two objections to the subpoena: (1) the excessive breadth of paragraph 5, and (2) the demand for documents covered by 26 U.S.C. § 6103. Accordingly, the June 5, 1998 subpoena shall be modified as follows:

Paragraph 5 (five) is hereby stricken and replaced with the following "No document the production of which would violate 26 U.S.C. § 6103 is sought by this subpoena."

### CONCLUSION

The plaintiff in this case has no doubt suffered ineffably throughout this entire ordeal. He understandably is in search of closure. Nonetheless, he must pursue closure in accordance with the well-worn rules common to our judicial process. Thus, for the reasons set forth above, it is hereby

ORDERED that the plaintiff's motion to compel is GRANTED in part and DENIED in part; further it is

---

**3.** Although the Court is disappointed by the Department's inadvertent destruction, it nonetheless commends General Counsel Neal Wolin and others at the Treasury Department for their diligent and forthright handling of this matter after the mistake was discovered.

ORDERED that plaintiff's motion to vacate the protective order, and for sanctions, is DENIED; further it is

ORDERED that the June 5, 1998 subpoena be modified in conformance with the directives set out above; further it is

ORDERED that all documents responsive to the modified subpoena shall be produced to plaintiff no later than October 15, 2000, unless that date is extended for good cause.

SO ORDERED.