**ZOLTEK CORPORATION, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 96–166 C.

United States Court of Federal Claims.

April 13, 2004.

---

Dean A. Monco and John S. Mortimer, Chicago, IL, for plaintiff. James F. Davis, Washington, DC, of counsel.

Gary L. Hausken, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant, with whom were Vito J. DiPietro, Director; and Robert D. McCallum, Jr., Assistant Attorney General.

## OPINION

DAMICH, Chief Judge.

Plaintiff Zoltek Corporation (hereinafter "Zoltek") filed this Motion to Compel Discovery on July 30, 2002, and asks the Court to compel discovery of certain documents and deposition testimony of employees of Northrop Grumman Corporation (hereinafter "Northrop"), the main government contractor on the B–2 Bomber. These documents and testimonies relate to the Government's alleged infringement of Zoltek's United States Patent No. Re. 34,162 (hereinafter "Re. '162 patent"). For the reasons discussed below, Zoltek's motion is GRANTED IN PART and DENIED IN PART.

## I. Background

Zoltek brought this action seeking compensation for use of its methods claimed in the Re. '162 patent. Second Amended Complaint at 2. The patent-in-suit is directed to a carbon fiber product made by a particular process. *Id.* Zoltek specifically asserts infringement by "at least … the B–2 Stealth Bomber." *Id.* The United States denies infringement, and denies using sheet products made by the patented methods on the B–2 Bomber.

On October 31, 2001, Zoltek served three subpoenas upon Northrop, which is not a party to this litigation. Zoltek's Motion to Compel Discovery (hereinafter "Motion to Compel"), at Ex. 1. These subpoenas commanded deposition testimony from two Northrop employees, Michael Capoccia and George Rodgers; testimony from a Northrop employee having relevant knowledge pursuant to Rule 30(b)(6), Rules of the Court of Federal Claims (hereinafter "RCFC"); and the production of documents and things pertaining to this litigation, also pursuant to RCFC 30(b)(6). *Id.*

After several delays in action on the subpoenas for a variety of reasons, Northrop refused to provide any witnesses in connection with the 30(b)(6) subpoena in a letter dated April 26, 2002. Opposition, at Ex. 11. This letter stated that the subpoena, in addition to being overbroad, was "unduly burdensome … ambiguous, would require the disclosure of information which is classified and/or otherwise protected from discovery, and seeks information irrelevant to the subject of the litigation." *Id.*

On May 17, 2001, Zoltek objected to Northrop's "inordinate delay" in scheduling a conference call to discuss these issues. Motion to Compel, at Ex. 12. Zoltek argued that several facts contradicted Northrop's security concerns: (1) the patent in suit was never classified by the U.S. in any way, even though the parent patent was reviewed by members of the Air Force and Navy during the early stages of the application process; (2) Northrop employee Michael Cappoccia, solicited Zoltek in February, 1997 to produce partially carbonized fibers for the B–2 division and never mentioned any security concerns; and (3) Northrop participated in the production of a made-for-TV documentary on the History Channel dealing with stealth technology and the B–2 Bomber, and this documentary specifically refers to the capability of carbon fiber sheets to absorb radar waves as an important characteristic of the B–2 Bomber. *Id.* Zoltek also reminded Northrop that discovery is subject to the terms of the protective order in this case. *Id.*

On June 12, apparently in an effort to compromise on the discovery impasse, Zoltek prepared a letter containing twenty questions that it would like to see answered by Mr. Capoccia and Mr. Rodgers, and specifically requested that the U.S. consult with its security officer to determine what questions the

security officer would permit Northrop to answer. *Id.* at Ex. 17. In its response, the U.S. stated that Northrop would not be permitted to answer eleven of the questions. *Id.* at Ex. 18. In response, Zoltek filed this motion to compel the production of these witnesses and documents from Northrop on July 30, 2002.

## II. Classified Material

Zoltek advances four arguments in support of its motion: (1) Zoltek seeks only "information relating to Zoltek's patent-in-suit, a public document never restricted in any way by the U.S.,"; (2) any argument that material cannot be released because it is classified "has been waived by more than six (6) years of discovery, including production of material specifications regarding materials used on the B–2 Bomber"; (3) Northrop allegedly solicited Zoltek to produce partially carbonized fibers for the B–2 program with no mention made of security concerns; and (4) Northrop participated in the making of a documentary about the B–2 Bomber for the History Channel cable television channel. Motion to Compel, at 1–2, 6–7.

*A. Patent–in–Suit as a Public Document*

■ Zoltek seems to believe that because the Re.'162 patent was never classified, all material related to the patent in this litigation must also be unclassified. This is simply not the case. While Zoltek's Re. '162 patent on its own may not be worthy of classification, work done related to it may very well implicate national security issues. The uses to which the carbonized fibers are put, the ways they are modified, and other factors that allow the carbonized fibers to make the B–2 Bomber what it is, could all implicate national security. This idea is acknowledged by Executive Order 12598, which states in part:

Sec. 1.8. Classification Prohibitions and Limitations . . .

(e) Compilations of items of information which are individually unclassified may be classified if the compiled information reveals an additional association or relationship that: . . .

(2) is not otherwise revealed in the individual items of information.

Exec. Order No. 12598, 60 Fed.Reg. 19825 (Apr. 17, 1995). Thus, even if some of the material related to Zoltek's patent in this litigation is unclassified, its release in conjunction with already available information could well implicate national security. The fact that the Government was able to release some information does not show that all material connected with this litigation is unclassified. To the contrary, this action shows only that *some* unclassified information exists on the B–2 program.

Northrop argues that Zoltek's subpoena imposes an undue burden because "[g]ranting Zoltek's motion would place Northrop in an impossible position, forcing it to literally choose between violating a court order, or disclosing highly classified information which Northrop has a duty to refrain from disclosing, and producing Government property which Northrop is not entitled to produce." Opposition, at 1–2. If the information in question is in fact classified, disclosure to unauthorized parties could both violate the Espionage Act and constitute an unlawful conversion of Government property. 18 U.S.C. § 793, 794, 798; *United States v. Fowler*, 932 F.2d 306, 309–10 (4th Cir.1991). Subpoenas that direct a party to violate federal law are generally found to constitute an undue burden. *See e.g., Flatow v. The Islamic Republic of Iran*, 196 F.R.D. 203, 207 (D.D.C.2000) (portion of subpoena commanding production of IRS records which the IRS was prohibited by statute from releasing "surely" imposed an undue burden by demanding a violation of federal law); *Linder v. National Security Agency*, 94 F.3d 693 (C.A.D.C.1996) (subpoena imposes an undue burden where it demands the release of classified national security information). If the material that Zoltek is seeking is in fact classified, granting Zoltek's motion would place Northrop in a "Catch–22" situation similar to that in *Flatow*, 196 F.R.D. at 207.

Government officials have confirmed that the information sought by Zoltek is classified and that access to it requires a security clearance by submitting the declaration of John B. Hennessey, Director of Security and

Special Programs, Department of the Air Force, who is familiar with the B–2 program. Statement of the United States with Respect to Zoltek's Motion to Compel Discovery (hereinafter "Statement of the United States"), at Ex. 1. His declaration explains that the B–2 aircraft is subject to the Special Access Program, which controls "access, distribution, and protection of particularly sensitive classified information," and functions as another level of control beyond classification of documents. Declaration of John B. Hennessey, at ¶ 3–4. In fact, this Court has already found that portions of the B–2 program are a Special Access Program. *McDonnell Douglas Corp. v. United States*, 37 Fed.Cl. 270, 276 (1996). While classified material is designated "Confidential", "Secret", or "Top Secret", special access programs require an additional level of security for access. *Id.* The measures taken by the Government to protect information related to this program clearly indicate that some of it is classified.

As the Government has made an official determination that the requested material is classified, this Court will not ask Northrop to act in contradiction of this determination. As a nonparty who is involved in this dispute only as a result of its contract with the Government, Northrop is in no position to challenge the Government's judgment as to what information is properly classified. Ordering Northrop to do so would impose an undue burden. *See Flatow* 196 F.R.D. at 207; *Linder*, 94 F.3d at 693.

As a side note, it should also be mentioned that Zoltek's counsel was warned of potential security problems when the subpoenas were issued, and "encouraged" to fill out an application to obtain the requisite security clearance as early as 2001. Coyne Decl., at ¶ 5. Had Zoltek's counsel heeded this advice, this opinion may have been unnecessary. However, Zoltek's attorneys did not apply to the appropriate executive agency to allow it to determine whether a security clearance was appropriate. Therefore, at least some of the reason for Zoltek's lack of access to the information in question can be laid at the feet of Zoltek's counsel.

## B. Waiver

Zoltek's second argument claims that concerns about the release of classified information "has been waived by more than six (6) years of discovery . . . ." Motion to Compel at 2. Apparently, Zoltek believes that Northrop's and the Government's release of nonclassified information relating to the B–2 program constitutes a waiver of classification regulations for classified documents related to this case.

 As a threshold matter, Northrop did not waive it's right to object to Zoltek's subpoenas by failing to timely object to them. The time allowed for an objection to a subpoena *duces tecum* is measured from the date the subpoena was served. RCFC, Rule 45(c)(2)(B). Here, the subpoena was never properly served because Northrop's counsel never stated that he was authorized to accept service. Coyne Decl., ¶ 7. Further, upon receipt of the subpoenas, Northrop's counsel informed Zoltek that he believed that the subpoenas were overbroad and raised security concerns. *Id.* While the parties negotiated as if the subpoenas were properly served, objections were raised throughout the process. Under these circumstances, it seems clear that Northrop did not waive its right to object to the subpoenas. *See Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48–51 (S.D.N.Y.1996) (A District Court allowed a nonparty to object to a subpoena where the nonparty attempted to negotiate the scope of that subpoena for several months, even though the nonparty failed to strictly adhere to the time limits for objection.).

Waiver is defined as "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). In the present case, Northrop is not asserting that it has a right or privilege to refuse to release the information in question. To the contrary, Northrop refuses to reveal the information in question because it is *required* by law to refuse to disclose classified information to parties without proper authorization to view it. Under the Espionage Act, 18 U.S.C. § 793, the willful transmission of classified information to any person not entitled to receive it is a criminal offense. Thus, in

refusing to reveal classified information, Northrop is merely obeying a federal law, rather than asserting a privilege.

We must also, however, examine whether or not the United States has waived any privilege it may have because, as the U.S. asserts, it "owns or controls much of the information which is sought in Zoltek's motion to compel." Statement of the United States at 1. The U.S. has expressed security concerns throughout discovery, although it readily admits to "providing all available unclassified information" to Zoltek. Statement of the United States at 2–3. While Zoltek seems to believe that this action waives the right of the U.S. to withhold additional, classified information, the reverse is true. In fact, the Government's behavior is completely consistent with the actions it would be expected to take if it chose to invoke the state secrets privilege. In *Ellsberg v. Mitchell*, 709 F.2d 51, 57 (D.C.Cir.1983), the Court of Appeals for the District of Columbia Circuit examined the application of the state secrets doctrine and held that "whenever possible, sensitive information must be disentangled from nonsensitive information to allow for the release of the latter." While the U.S. has not yet invoked the state secrets doctrine in this case, it is an apt analogy.

Even if the U.S. had released some classified information to Zoltek, that action does not waive the Government's continued control over other classified information relevant to this case. The disclosure of documents for which the executive privilege could be claimed only waives the privilege with respect to the documents specifically released. *In re Sealed Case*, 121 F.3d at 729, 741 (D.C.Cir.1997). In sum, it is clear that the Government has not "waived" the right to restrict the release of classified information through its actions.

### C. Solicitation to Purchase Partially Carbonized Fibers

In 1997, Northrop solicited Zoltek to sell controlled resistivity carbon fibers to Northrop. The solicitation was made on the letterhead of Northrop's B–2 Division. In Zoltek's view, this act apparently indicates that all of Northrop's activities involving these fibers were unclassified or that such a solicitation waived Northrop's or the U.S.'s right to keep such information classified. The existence of carbon fibers and their particular traits are not classified. Nor, apparently, is the fact that Northrop chose to purchase them under the auspices of the B–2 program. The use to which these fibers are put by Northrop, however, is a different matter. Northrop did not indicate how it would use the requested fibers, what processes might be applied to them, what they may be made into, or how precisely they were relevant to the B–2. Another supplier of these fibers characterized Northrop as " '[A] black box,' th[at] did not reveal why they were buying carbon fibers or how they intended to use those fibers." Statement of the United States at 6.

It is entirely possible that the Government has strong reasons for keeping this material secret. Even if some of this information is publicly available, the totality of its use and how it is incorporated in the B–2 could be of national security concern. As was noted above, even unclassified material, if collected and organized in a particular way, can be considered classified material. Exec. Order No. 12598, Sec. 1.8(e)(2), 60 Fed.Reg. 19825 (Apr. 17, 1995). Therefore, the fact that Zoltek was solicited by Northrop to sell certain types of fibers does not show that Northrop waived any confidentiality regarding the B–2 program outside of what was revealed in Northrop's solicitation.

### D. Documentary for the History Channel

Zoltek also alleges that Northrop's participation in a documentary about the B–2 Bomber for the History Channel waives Northrop's right to refuse disclosure of classified information. The documentary in question provided very general information about the B–2 Bomber, and cautioned that most information about the B–2 Bomber is classified. According to Northrop, the most specific statement concerning the use of carbon fiber technology provided in the documentary states that "in addition to making the plane more fuel efficient, the carbon fiber epoxy composites help absorb radar rather than reflect it." Opposition, at 15. The documen-

**18**

tary also provides that "nearly every important detail about the B–2 is still top secret." *Id.* Finally, there is no way to determine the source of the information used in the documentary, which makes consideration of this factor questionable on hearsay grounds. *Id.* While Zoltek asserts that the documentary "specifically refers to the capability of carbon fiber sheet products to absorb radar waves as an important component in the low observable characteristics of the B–2 Bomber...", this statement is far too general to be considered a waiver of the duty to maintain the secrecy of national security information, even if such a duty could be waived.

### III. Other Information Requested Through Subpoena

#### A. Relevance

Northrop objects to the portion of the 30(b)(6) subpoena that seeks information about the total cost of the B–2 Bomber. Northrop argues that this information is not relevant to the present action because compensation under 28 U.S.C. § 1498 is determined by what the patentee has lost, and not what the Government has gained. Opposition, at 18. (citing *Leesona Corp. v. United States*, 220 Ct.Cl. 234, 599 F.2d 958, 969 (1979)). Zoltek argues that the total cost is relevant because it is relying on the "willing buyer-willing seller" standard, instead of the "benefit conferred" rationale. Reply, at 22–23.

This debate is premature. Currently, Zoltek is attempting to establish liability. If liability is not established, then issues relating to damages are irrelevant. The proper time to explore this issue is when, and if, this court considers damages for proven infringement. Zoltek has not demonstrated the relevance of this inquiry to the issue of liability, and it is therefore disallowed.

#### B. Breadth of Subpoenas

Northrop believes that Zoltek's subpoenas are "facially over broad." Opposition at 15. Zoltek may obtain discovery of any matter relevant to its claim that is not otherwise privileged. *See* RCFC 26(b)(1). Zoltek's complaint in this case alleges infringement

by "at least ... the B–2 program." Complaint, at 1. On its face, this complaint suggests that Zoltek is unsure that it possesses the proper evidence to support a claim against any other program conducted by Northrop. Northrop therefore argues that the subpoenas are overbroad because they seek information pertaining to programs far beyond the B–2 program. The Government adds to this argument by stating that "Zoltek is searching for infringement, not trying to support claims it reasonably believes to exist." Statement of the United States, at 14.

■ Discovery rules are designed to assist a party in proving a claim it reasonably believes to be viable without discovery, not to find out if the party has any basis for a claim. *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1327 (Fed.Cir.1990). Many of Zoltek's requests reach beyond the B–2 program. *See* Opposition, (Ex. 1). For example, Zoltek's 30(b)(6) subpoena lists the following as a subject for deposition: "The use of partially carbonized fibers ... *on any and all products produced on behalf of or for the United States Government.*" Opposition, (Ex. 1)(emphasis added). To prove that this discovery is permissible, at a minimum, Zoltek must show either that it has a claim that it reasonably believes to exist against a Northrop program other than the B–2 program, or that its requests are relevant to Zoltek's claim against the B–2 program. Zoltek does not point to specific facts suggesting infringement by any other Northrop program, which is necessary to show that discovery should be expanded beyond the B–2 program. Zoltek further admits that it would be willing to narrow requests to the B–2 program "if appropriate." Zoltek's Reply Memorandum (hereinafter "Zoltek's Reply"), at 6. This course of action seems appropriate at this stage. If Zoltek can credibly assert a claim against another Northrop program, this issue can be revisited.

In light of the fact that Zoltek has not offered evidence of infringement by any other program, this Court hereby confines discovery to the subject matters in the 30(b)(6) subpoena relating to the B–2 program. Accordingly, each item of subject matter listed for deposition on the 30(b)(6) subpoena

should be altered as followed (added portions are italicized):

(1) The use of partially carbonized fibers and sheets/mats/coatings containing partially carbonized fibers on *the B–2 Bomber.* (instead of any and all products on behalf of the United States)

(2) The purchase by the U.S. Government and/or its contractors, sub-contractors, or agents of partially carbonized fibers and sheets/mats/coatings containing partially carbonized fibers for use *on the B–2 Bomber.*

(3) (Should be deleted entirely).

(4) (Should be deleted entirely).

(5) All tests regarding the use of partially carbonized fibers and sheets/mats/coatings containing partially carbonized fibers on *the B–2 Bomber.* (instead of any products produced on or behalf U.S. Government)

(6) (Remains the same).

(7) (Remains the same).

(8) (Remains the same).

The "List of Documents and Things" attached to the 30(b)(6) subpoena should also be limited to materials relevant to infringement by the B–2 program as follows:

(1) (Remains the same)

(2) All documents and things relating to partially carbonized fibers, and sheets/mats/coatings containing partially carbonized fibers *used on the B–2 Bomber.*

(3) All documents and things relating to manufacture, purchase and/or use of partially carbonized fibers and sheets/mats/coatings containing partially carbonized fibers *on the B–2 Bomber* (not "on any Government weapons systems").

(4) Any and all documents regarding the purchase by Northrop Grumman Corporation, *for use on the B–2 Bomber,* of partially carbonized, i.e. not fully carbonized, fibers and/or partially carbonized sheets/mats/coatings.

(5) All documents and things relating to tests conducted regarding partially carbonized fibers and/or sheets/mats/coatings containing partially carbonized fibers for use *on the B–2 Bomber.*

(6) A sample of each and every type of partially carbon fiber made by or for Northrop Grumman for use *on the B–2 Bomber.*

(7) A sample of each and every type of sheet/mat/coating purchased or used by or for Northrop Grumman for use *on the B–2 Bomber.*

## C. Request for Cumulative Discovery

Northrop objects to Zoltek's subpoenas as being "cumulative of discovery already conducted by Zoltek." Opposition at 17. Northrop argues that the Government has already provided documents and relevant physical samples relating to the B–2 program, and thus the subjects listed in the 30(b)(6) subpoena are cumulative of the information already discovered. *Id.* at 17–18. Specifically, Northrop identifies information on the price of the B–2 Bomber, physical samples of each and every type of carbon fiber sheet/mat used in any capacity on the B–2 Bomber, and the 41 documents relating to the use of carbon fiber materials produced for inspection on March 25, 1999. *Id.* The issue of price of the B–2 Bomber has already been addressed.

Many of Northrop's remaining objections are based on the fact that on March 16, 2001, this Court ordered that the Government produce "a sample of each and every type of carbon fiber sheet/mat used in any capacity on the B–2 Stealth Bomber." *Id.* at Ex. 23. The Government responded by producing numerous samples for testing. *Id.* at Ex. 24. The Government also produced 41 documents relating to the use of carbon fiber materials on March 25, 1999. Opposition Ex. at 19.

Discovery rules empower this Court to restrict discovery of information that is "unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." RCFC 26(b)(2)(i); *Florsheim Shoe Co. v. United States,* 744 F.2d 787, 797 (Fed.Cir.1984) ("Questions of the scope and conduct of discovery are, of course, committed to the discretion of the trial court"). Northrop, particularly as a nonparty, should not be burdened by being forced to produce materials that have already been provided by

the Government. Therefore, Northrop need not comply with the 30(b)(6) subpoena to the extent the subpoena seeks information duplicative of that already provided by the Government. If Northrop wishes to argue that it is unduly burdensome to determine which requested information is duplicative and which requested information is not duplicative, Northrop should submit to this Court an estimate of the number of man-hours necessary to make this determination. *See Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 405 (C.A.D.C.1984).

### D. Depositions on Written Questions

 The Government requests that the depositions be limited to written interrogatories to ensure that no classified security information is released. Statement of the United States, at 20–21. Zoltek argues that Depositions upon written questions are simply impractical, given the length of this litigation and the probability that further disputes will arise. Reply, at 23–24. Additionally, Zoltek seeks to have this Court available during live interrogatories to resolve issues over the scope of classified disclosures. *See* Reply, at 24.

Given the circumstances of this case, written interrogatories are appropriate to ensure either that no classified information is inadvertently released. If discovery disputes do arise, they can be addressed by this Court in the same way it addresses other discovery disputes.

### IV. Conclusion

This Court hereby:

(1) Denies discovery of classified information that is properly designated as such by the appropriate executive official;

(2) Orders that discovery is limited to information pertaining to the use of carbon fiber sheet products on the B–2 program;

(3) Orders that Northrop either reveal all information demanded by the subpoenas except information that is classified, not related to the use of carbon fiber sheet products, or identical to that already provided; or submit an estimate detailing the number of man-hours required to do so;

(4) Orders that Zoltek conduct the depositions of Northrop employees upon written interrogatories; and

(5) Orders that a status conference will be held within 14 days of the issuance of this Order to determine how to proceed.

It is so ordered.